**Patricia S. TISCHIO, Plaintiff,**

**v.**

**BONTEX, INC., James C. Kostelni, and Dolores S. Kostelni, Defendants.**

No. CIV.A. 98–1608(AJL).

United States District Court,
D. New Jersey.

June 29, 1998.

Opinion Denying Reargument,
July 23, 1998.

William A. Feldman, Feldman & Fiorello, Wayne, NJ, for Patricia S. Tischio.

Patrick M. Stanton, Stanton, Hughes, Diana, Zucker & Salsberg P.C., Florham Park, NJ, for Bontex, Inc.

Michael R. Griffinger, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for James C. Kostelni.

Edwin J. O'Malley, Jr., O'Malley, Surman & Michelini, Brick, NJ, for Dolores S. Kostelni.

## OPINION

LECHNER, District Judge.

This is an action brought by the plaintiff, Patricia S. Tischio ("Patricia Tischio"), against the defendants, Bontex, Inc. ("Bontex"), James C. Kostelni ("James Kostelni") and Dolores S. Kostelni ("Dolores Kostelni") (collectively, the "Defendants"). The instant action asserts claims for, among other things, breach of an alleged lifetime employment contract, tortious interference with contract and discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.*

The Defendants have filed a motion to transfer (the "Motion to Transfer") the action to the United States District Court for the Western District of Virginia (the "Western District of Virginia"), pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)").[1]

---

For the reasons set forth below, the Motion to Transfer is granted; the action is transferred to the Western District of Virginia.

*Background*

### A. *Procedural History*

On 11 March 1998, Patricia Tischio filed a complaint (the "Complaint") with the Superior Court of New Jersey, Law Division, Essex County. *See* Complaint.

On 13 April 1998, the Defendants removed the action to this court by filing a notice of removal (the "Notice of Removal"). *See* Notice of Removal. On 15 April 1998, Bontex filed an amended notice of removal (the "Amended Notice of Removal"). *See* Amended Notice of Removal.

On 5 May 1998, Bontex filed an answer (the "Bontex Answer") to the Complaint. *See* Bontex Answer. On the same day, James Kostelni filed an answer (the "James Kostelni Answer") to the Complaint. *See* James Kostelni Answer. On 6 May 1998, Dolores Kostelni filed an answer (the "Dolores Kostelni Answer") to the Complaint. *See* Dolores Kostelni Answer. The Motion to Transfer was then filed by the Defendants.

### B. *Facts*

Patricia Tischio is a resident of the State of Connecticut and owns real estate in New Jersey. *See* Complaint; Patricia Tischio Aff. ¶¶ 6(i), 10. Bontex is a publically owned corporation that is incorporated in the State of Virginia and maintains its principal place of business in Buena Vista, Virginia. *See* Complaint ¶ 2; James Kostelni Aff. ¶¶ 2–3. James Kostelni is a resident of the State of Virginia and is the President, Chief Executive Officer and Chairman of the Board of Directors of Bontex.[2] *See* Complaint ¶ 3; James Kostelni Aff. ¶ 2. Dolores Kostelni is a resident of the State of Virginia. *See* Dolores Kostelni Aff. ¶ 1. She is married to

James Kostelni and is the sister of Patricia Tischio. *See* Complaint ¶ 3; James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1. Dolores Kostelni is neither a director, nor an officer nor an employee of Bontex. *See* Dolores Kostelni Aff. ¶ 2.

Bontex is the successor corporation to Georgia–Bonded Fibers, Inc. ("Georgia–Bonded"). *See* Complaint ¶ 2. Georgia–Bonded was a manufacturing corporation founded in 1934 by the father of Patricia Tischio, Hugo N. Surmonte ("Hugo Surmonte"). It was incorporated under the laws of the State of New Jersey. *See id.* ¶¶ 1–2; Patricia Tischio Aff. ¶ 2. According to Patricia Tischio, Georgia–Bonded/Bontex maintained its principal place of business in Newark, New Jersey until October 1997. *See* Complaint ¶ 2; Patricia Tischio Aff. ¶ 2. The Defendants dispute the assertion that Georgia–Bonded/Bontex maintained its principal place of business in Newark until 1997. *See* Reply Brief at 11 n. 1.

Bontex manufactures and markets blastomeric saturated cellulose fiberboard that is used in a variety of consumer products. *See* James Kostelni Aff. ¶ 4. The sole manufacturing facility of Bontex is located in Buena Vista, Virginia (the "Virginia Facility"). *See id.* ¶ 5. Approximately ninety-seven individuals are employed by Bontex at the Virginia Facility. *See id.* ¶ 5. The majority of the corporate records of Bontex are located at the Virginia Facility. *See* Dugan Aff. ¶¶ 4–6, 8–10.

Bontex currently maintains a sales office and warehouse facility in Newark, New Jersey (the "New Jersey Facility"). *See* James Kostelni Aff. ¶ 8. Two full-time staff and one part-time warehouse employee are employed by Bontex at the New Jersey Facility. *See id* . The New Jersey Facility is scheduled to be permanently closed by Bontex before the end of 1998. *See id.* The closure of this

---

States District Court for the District of Virginia (the "Reply Brief"), attaching Exhibit A.

In opposition to the Motion to Transfer, Patricia Tischio submitted: Plaintiff's Memorandum of Law in Opposition to the Motion to Transfer Venue (the "Opposition Brief"); and Affidavit of Patricia Surmonte Tischio (the "Patricia Tischio Aff."), attaching Exhibits A through C.

**2.** It is unclear from the Complaint whether James Kostelni is sued in his individual capacity and/or in his capacity as President, Chief Executive Officer and Chairman of the Board of Directors of Bontex. *See* Complaint.

facility is one of the reasons for this dispute. *See* Complaint.

In 1989, allegedly at the request of Hugo Surmonte, Patricia Tischio joined Bontex as a full-time employee at the New Jersey Facility. *See id.* ¶ 4; Patricia Tischio Aff. ¶ 3. She later became a member of the Bontex Board of Directors (the "Bontex Board").[3] *See* Complaint ¶ 1; James Kostelni Aff. ¶ 8. According to Patricia Tischio, Hugo Surmonte and James Kostelni promised her that, upon joining Bontex, she would assume the positions of Corporate Secretary and Office Manager and would be trained in those capacities. *See* Patricia Tischio Aff. ¶ 4. Patricia Tischio also asserts Hugo Surmonte promised her that, if she left her then current employment to work for Bontex, she would have "employment with Bontex in Newark or the vicinity for as long as [she] desired." *Id.* ¶ 3; *see* Complaint ¶¶ 4, 6.

The promise to Patricia Tischio of lifetime employment appears to have been confirmed several years later in a letter, dated 24 January 1994, (the "24 January 1998 Letter") from Hugo Surmonte to Patricia Tischio. *See* Complaint ¶ 8; Exhibit A to Patricia Tischio Aff. The mother of Patricia Tischio, Marie Surmonte ("Marie Surmonte"), also signed a statement (the "25 November 1994 Statement"), transcribed by one of her nurses, stating that James Kostelni had promised her and Hugo Surmonte that Patricia Tischio would have a lifetime job with Bontex. *See* Patricia Tischio Aff. ¶ 6; Exhibit B to Patricia Tischio Aff.

Patricia Tischio contends that, following the death of Hugo Surmonte in October 1994, James Kostelni began transferring the important operations of Bontex from the New Jersey Facility to the Virginia Facility. *See* Complaint ¶ 9; Patricia Tischio Aff. ¶ 5. Patricia Tischio contends her responsibilities at Bontex were diminished because of the transfer of these operations. *See* Patricia Tischio Aff. ¶ 5. James Kostelni allegedly assured Patricia Tischio her responsibilities would be returned to the New Jersey Facility in the future. *See id.*

On 25 June 1997, a meeting of the Bontex Board was held in Lexington, Virginia. *See* James Kostelni Aff. ¶ 8. At the meeting, all members of the Bontex Board, with the exception of Patricia Tischio, voted to close the New Jersey Facility permanently. *See id.* ¶¶ 8, 11. Patricia Tischio attended the meeting but abstained from voting on the closure of the New Jersey Facility. *See id.* ¶ 8. On the same day, Patricia Tischio was advised by Bontex that her position would be terminated, effective January 1998. *See* Complaint ¶ 9; Patricia Tischio Aff. ¶ 5. It appears she is still a member of the Bontex Board.

Patricia Tischio contends her termination is, among other things, a breach of the alleged lifetime employment contract she had with Bontex. *See* Complaint ¶¶ 4–12. She also contends her termination is discriminatory because Bontex has decided to retain as an employee in New Jersey an individual employed at the New Jersey Facility, Simon Grubin ("Grubin"), who is male and younger than she. *See id.* ¶¶ 17–20.

*Discussion*

The Defendants argue the instant action should be transferred to the Western District of Virginia because it is the forum most convenient to the majority of the parties and witnesses and such transfer will best serve the interests of justice. *See* Moving Brief at 1. The Defendants also argue most of the sources of proof are located in the Western District of Virginia. *See id.*

Patricia Tischio argues the transfer of the action to the Western District of Virginia would be "manifestly unjust and improper" because twelve potential non-party witnesses reside in or near New Jersey and also because she contends New Jersey law will govern the issues involved in the action. *See* Opposition Brief at 1.

A. *Proper Venue*

■ The Amended Notice of Removal asserts jurisdiction is based upon 28 U.S.C.

---

**3.** As a member of the Bontex Board, Patricia Tischio has traveled to Virginia for various meet-

ings. *See* James Kostelni Aff. ¶ 6; Dugan Aff. ¶ 7.

§ 1332 ("Section 1332").[4] *See* Amended Notice of Removal ¶ 5. Because jurisdiction is founded solely upon diversity of citizenship, subsection (a) of section 1391 of Title 28 ("Section 1391") of the United States Code governs in which district venue is proper for the adjudication of this action. *See* 28 U.S.C. § 1391(a).

Section 1391(a) provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated,* or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Id.* (emphasis added). For purposes of Section 1391, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. .§ 1391(c); *see Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

Bontex appears to be a "resident" of the State of New Jersey because it is subject to personal jurisdiction here by virtue of, among other things, its maintenance of the New Jersey Facility. James Kostelni and Dolores Kostelni, however, are not residents of the State of New Jersey. *See* James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1. Venue is not proper in this District pursuant to subsection (1) of Section 1391(a) because all of the Defendants do not reside in this District. *See* 28 U.S.C. § 1391(a)(1). Venue would be proper in this District only if a substantial part of the events or omissions giving rise to the claims by Patricia Tischio occurred in New Jersey. *See* 28 U.S.C. § 1391(a)(2).

■ In determining where a substantial part of the events or omissions giving rise to a claim arises for purpose on Section 1391, three factors are relevant: (1) the place of injury; (2) the "weight of contacts"; and (3) whether a substantial part of the events or omissions giving rise to the claim occurred in the district. *See Eason v. Linden Avionics, Inc.,* 706 F.Supp. 311, 329 (D.N.J.1989).

■ The central basis for the action by Patricia Tischio is that her alleged lifetime employment contract with Bontex was wrongfully terminated by Bontex when it decided to close the New Jersey Facility. *See* Complaint ¶¶ 4–12. Such decisions to close the New Jersey Facility and to terminate Patricia Tischio occurred in Virginia on 25 June 1997 at the meeting of the Bontex Board. *See* Patricia Tischio Aff. ¶ 5; James Kostelni Aff. ¶ 8.

Patricia Tischio also alleges James Kostelni and Dolores Kostelni tortiously interfered with her alleged lifetime employment contract. *See* Complaint ¶¶ 21–23. Although unclear from the Complaint, such alleged tortious interference with the contract appears to have occurred in Virginia where James Kostelni and Dolores Kostelni reside. *See* James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1.

Patricia Tischio also contends she was discriminated against when Bontex decided to retain Grubin as an employee instead of re-

---

**4.** Section 1332 provides, in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-

(1) citizens of different States;

\* \* \* \* \* \*

(c) For the purposes of this section and section 1441 of this title-

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business. . . .

28 U.S.C. § 1332.

taining her. *See* Complaint ¶¶ 17–20. The corporate headquarters of Bontex, and presumably the place where employment decisions are made, is located in Virginia. *See* James Kostelni Aff. ¶ 3. In addition, decisions regarding the duties of the employees of Bontex involve the Human Resources Department of Bontex which is also located in Virginia. *See id.* ¶ 8.

Based on the foregoing, it appears a substantial part of the events or omissions giving rise to the claims by Patricia Tischio did not occur in this District but rather occurred in Virginia. *See* Complaint. Venue appears to be improper in this District in accordance with Section 1391(a). *See* 28 U.S.C. § 1391(a). Accordingly, the action must either be dismissed, or, if it is in the interest of justice, it must be transferred to a district in which it could have been brought in the first place. *See* 28 U.S.C. § 1406(a) ("Section 1406(a)");[5] *see also Jumara,* 55 F.3d at 878.

Despite the foregoing, Patricia Tischio argues her cause of action arose in New Jersey and venue is therefore proper in this District. *See* Opposition Brief at 10–11. This contention is premised on the fact that the claims of Patricia Tischio arise out of her employment in New Jersey by a former New Jersey corporation and the fact that the alleged promise of a lifetime employment contract was made in New Jersey. *See id.* at 10. In addition, she argues her injury, namely the termination of her employment and violation of her employment rights, occurred in New Jersey. *See id.* at 11.

Even if the contentions of Patricia Tischio are correct and venue is proper in this District pursuant to Section 1391(a), the action nevertheless may be transferred for the convenience of the parties and the witnesses and in the interests of justice. *See* 28 U.S.C. § 1404(a) ("Section 1404"). Such transfer appears appropriate for several reasons.

First, it appears Dolores Kostelni is not subject to personal jurisdiction in New Jersey.[6] *See* Dolores Kostelni Aff. ¶ 1. Thus, if this action were to proceed in this District, the claims against her would need to be dismissed.

Although it is possible the claims against Dolores Kostelni could be severed in accordance with Rule 21 of the Federal Rules of Civil Procedure ("Rule 21")[7] and then transferred to another district while the claims against Bontex and James Kostelni proceeded in this District, *see Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir.1994), severance is not appropriate in this case.

In *Cottman,* a franchisor brought an action for declaratory and injunctive relief and damages against a franchisee (Marino) and the corporation of the franchisee (Trans One), alleging breach of contract, trademark violations, and unfair competition. *See Cottman,* 36 F.3d at 292. Marino filed a motion to dismiss the action based upon improper venue. *See id.* Trans One did not object to venue. *See id.* at 292. The district court denied the motion by Marino and entered judgment in favor of franchisor. The defendants appealed.

On appeal, the Circuit found the claims against Marino should have been transferred to Michigan because the district court incorrectly relied upon a forum selection clause in a contract that was not at issue. *See id.* at 293, 296. Because Trans One did not object to venue, the issue presented was whether Trans One waived its objection to venue and thus whether only the claims against Marino should be severed and transferred to Michi-

---

5. Section 1406(a) provides:
 (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
 28 U.S.C. § 1406(a).

6. The Dolores Kostelni Answer asserts lack of personal jurisdiction as an affirmative defense. *See* Dolores Kostelni Answer at p. 5.

7. Rule 21 provides:

 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. *Any claim against a party may be severed and proceeded with separately.*
 Fed. R. Civ. Pro. 21 (emphasis added).

gan. *See id.* at 296. The Circuit concluded that, because Trans One was solely owned by Marino, Trans One was directly connected to the main issues in the case and therefore it would be improper to sever the claims. *See id.* As such, the Circuit transferred the entire action to Michigan.

In so holding the Circuit stated:

In the situation where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice. *One option is to transfer the entire case to another district that is proper for both defendants.* Another alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district.

36 F.3d at 296 (emphasis added). An action should not be severed, however, "if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 33 (3d Cir.1993); *Cottman,* 36 F.3d at 292.

In this case, although venue *may* be proper in this District with respect to Bontex and James Kostelni, the severance and transfer of the claims against Dolores Kostelni is not appropriate because the administration of justice would not be materially advanced by such an action. *See Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618–19 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968) (stating "where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants.").

First, it appears a single proper venue exists, namely, the Western District of Virginia, where all the allegations of Patricia Tischio can be litigated. Each of the Defendants is subject to jurisdiction in Virginia, *see*

James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1., and it appears a substantial portion of the events giving rise to the claims of Patricia Tischio occurred in Virginia. *See* 28 U.S.C. § 1391(a).

Second, each of the Defendants is directly connected to the central allegations by Patricia Tischio that her alleged lifetime employment contract was breached by Bontex and that James Kostelni and Dolores Kostelni tortiously interfered with such contract. Because the claims by Patricia Tischio against the Defendants are directly related, the severance and transfer of the claims against James Kostelni and Dolores Kostelni would require Patricia Tischio to litigate the same issues in two fora. As such, the severance of the claims is not appropriate. *See Sunbelt Corp.,* 5 F.3d at 33. Instead, the entire action will be transferred to one district in accordance with Section 1404(a) for the convenience of the parties and witnesses and in the interests of justice. *See Cottman,* 36 F.3d at 296; 28 U.S.C. § 1404(a).

### B. *Standard of Review Under Section 1404(a)*

Section 1404(a) authorizes a district court to transfer a case to any other district where venue is proper "[f]or the convenience of the parties and witnesses, in the interests of justice...." 28 U.S.C. § 1404(a).[8] The purpose of Section 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense. *See Ricoh Co. Ltd v. Honeywell, Inc.* ("*Honeywell*"), 817 F.Supp. 473 (D.N.J. 1993); *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1305 (D.N.J.1990).

The terms of Section 1404(a) set forth three factors to consider when determining whether to transfer a matter: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *See* 28 U.S.C. § 1404(a); *Jumara,* 55 F.3d at 879; *Hudson United Bank v. Chase Manhattan Bank of Conn., NA,* 832 F.Supp. 881, 887

---

**8.** Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a).

(D.N.J.1993), *aff'd,* 43 F.3d 843 (3d Cir.1994); *Honeywell,* 817 F.Supp. at 479. The transfer analysis, however, should not be limited to these three factors. Rather, the decision to transfer must incorporate "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879 (citation omitted); *Hudson United Bank,* 832 F.Supp. at 888.

The alternative forum proposed by the Defendants in the instant matter is the Western District of Virginia. *See* Moving Brief at 1. As a preliminary matter, it must be determined that the transferee venue is one in which the case "might have been brought." *See* 28 U.S.C. § 1404(a); *American Tel. & Tel. Co.,* 736 F.Supp. at 1305.

### 1. The Instant Matter Could Have Been Brought in the Western District of Virginia

■ As mentioned, the venue in this case is governed by Section 1391(a). *See* Notice of Removal ¶ 5. Venue is appropriate in the Western District of Virginia because all of the Defendants are residents of the State of Virginia and are subject to jurisdiction there. *See* James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1. In addition, upon a review of the Complaint, it appears a substantial part of the events giving rise to this action occurred in the Western District of Virginia. *See* Complaint. The decisions to close the New Jersey Facility and to terminate Patricia Tischio took place in Virginia. *See id.* ¶¶ 4–12. The tortious interference with the alleged lifetime employment contract of Patricia Tischio allegedly occurred in Virginia. *See id.* ¶¶ 21–23.

Based upon the foregoing, the instant action "might have been brought" in the proposed transferee forum, the Western District of Virginia pursuant to Section 1391(a)(1) and Section 1391(a)(2).

A defendant seeking a transfer must also establish an adequate alternative forum exists for the dispute. *See Lacey I,* 862 F.2d at 43. "Ordinarily, this requirement will be

satisfied when the defendant is 'amenable to process' in the other jurisdiction," unless "the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh'g denied,* 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982).

As mentioned, all of the Defendants are residents of Virginia. *See* James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1; Complaint ¶ 2. The Defendants are therefore amenable to process in Virginia.

Because a Virginia forum is capable of offering a satisfactory remedy for the parties, it is an adequate alternative forum for this dispute.

### 2. Private and Public Interests

Transfer analysis under Section 1404 is a flexible and individualized analysis and must be made on the unique facts presented in each case. *See Piper,* 454 U.S. at 249–250, 102 S.Ct. 252. A determination that transfer to another jurisdiction is appropriate represents an " 'exercise[ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.' " *Honeywell,* 817 F.Supp. at 479 (quoting *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628, 632 (3d Cir.1989)) (hereinafter "*Lony I* ") (quoting *Pain v. United Technologies Corp.,* 637 F.2d 775, 781 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)). There is no rigid rule governing the determination by a court; " '[e]ach case turns on its facts.' " *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43 (3d Cir.1988) ("*Lacey I*"). Added to those factors are the "interests of justice" and the impact on judicial administration of maintaining related actions in separate fora. *See Honeywell,* 817 F.Supp. at 479.

■ In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court listed various factors which should be considered when deciding if a certain action should be transferred.[9] These factors fall into two broad categories.

---

**9.** *Gulf Oil* involved a motion to dismiss under the doctrine of *forum non conveniens.* Courts rou-

■ The first category includes factors relating to the "private interests" of the parties in the context of the litigation. The types of private interests may include the choice of forum of the plaintiff, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the possibility of a jury view of the premises. *See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839; *American Tel. & Tel.,* 736 F.Supp. at 1306. Other private interests may include the preference of the defendant, whether the claim arose elsewhere, and the location of books and records. *See Jumara,* 55 F.3d at 879.

■ The second category consists of the "public interest" in the administration of courts and the adjudication of cases. Public interests include court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, the local interest in having a matter adjudicated at home and the familiarity of the forum court with the applicable law. *See Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839; *Jumara,* 55 F.3d at 879; *American Tel. & Tel.,* 736 F.Supp. at 1307.

■ The moving party has the burden of persuasion on a motion to transfer. *See Jumara,* 55 F.3d at 879; *Lony II,* 935 F.2d at 609; *Lony I,* 886 F.2d at 633; *Lacey I,* 862 F.2d at 44; *Tranor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa.1996); *Fortay v. University of Miami,* No. 93–3443, 1994 WL 62319, at *8 (D.N.J. Feb.17, 1994); *Honeywell,* 817 F.Supp. at 480. The burden is not on the plaintiff to show the proposed alternative forum is inadequate. *See Honeywell,* 817 F.Supp. at 480; *American Tel. & Tel.,* 736 F.Supp. at 1305. Rather, the burden is on the moving party to show the proposed alter-

native forum is not only adequate, but also more convenient than the present forum. *See Jumara,* 55 F.3d at 879; *Lacey I,* 862 F.2d at 43–44; *Honeywell,* 817 F.Supp. at 480. Generally, a moving party must submit " 'adequate data of record' " to facilitate the analysis. *See Fortay,* 1994 WL 62319, at *2 (quoting *Honeywell,* 817 F.Supp. at 480).

■ A "district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion" that transfer to another venue is appropriate. *See Lacey I,* 862 F.2d at 39; *see also Hudson United Bank,* 832 F.Supp. at 888; *Honeywell,* 817 F.Supp. at 480. The moving party must submit sufficient information in the record to facilitate the appropriate analysis and to meet its burden of persuasion. *See Piper,* 454 U.S. at 248, 102 S.Ct. 252; *Honeywell,* 817 F.Supp. at 480. This inquiry does not necessarily require extensive investigation. *See Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). The inquiry into the interests of the parties may be resolved by an examination of the affidavits submitted by the parties. *See id.; Lacey I,* 862 F.2d at 44; *Honeywell,* 817 F.Supp. at 480; *see also Fortay,* 1994 WL 62319, at *2. From that basis, the contentions of the plaintiff and the relevant private and public interests must be considered and balanced. *See Hudson United Bank,* 832 F.Supp. at 888.

#### a. *Private Interests*

The primary private interests in this action are the choice of forum by Patricia Tischio and the convenience of the available districts with regard to the sources of proof, namely, the witnesses and documentary evidence.

tinely look to the *Gulf Oil* factors for guidance on Section 1404(a) motions. *See Honeywell,* 817 F.Supp. at 479 n. 16. As well, Third Circuit decisions such as *Lony I, Lony v. E.I. DuPont de Nemours & Co.,* 935 F.2d 604, 609 (3d Cir.1991) (hereinafter *"Lony II"*) and *Lacey I,* which involve motions to dismiss under the doctrine of *forum non conveniens,* are relevant to a motion to transfer under Section 1404(a).

Federal courts have broader discretion to transfer an action under Section 1404(a), than to

dismiss under the common law doctrine of *forum non conveniens. See Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.,* 936 F.Supp. 177, 191 (D.Del.1996) (citation omitted); *Ruccolo v. BDP, Int'l, Inc.,* No. 95–2300, 1996 WL 735575, at *17 & n. 9 (D.N.J. Mar. 25, 1996); *cf. Lacey v. Cessna Aircraft Co.,* 932 F.2d 170 (3d Cir.), *reh'g denied en banc* (3d Cir.1991) (*"Lacey II"*); *Mediterranean Golf, Inc. v. Hirsh,* 783 F.Supp. 835, 840–41 (D.N.J.1991).

### 1. Choice of Forum

In the Third Circuit, the choice of forum by a plaintiff is a "paramount concern" in deciding a motion to transfer venue. *See Honeywell*, 817 F.Supp. at 480; *see also Shore Slurry Seal, Inc. v. CMI Corp.*, 964 F.Supp. 152, 156 (D.N.J.1997) (stating choice of proper forum by plaintiff is "paramount consideration" in transfer analysis); *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*, 847 F.Supp. 1244, 1246 (D.N.J. 1994) (stating choice of forum by plaintiff is accorded "significant weight"). The choice is "entitled to greater deference" when a plaintiff chooses its home forum. *See Honeywell*, 817 F.Supp. at 480.

 Indeed, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839; *Honeywell*, 817 F.Supp. at 480 (quotation omitted); *see also Lony II*, 935 F.2d at 609; *Lacey I*, 862 F.2d at 44. The choice of forum by a plaintiff is considered to be presumptively correct. *See Lacey I*, 862 F.2d at 45; *Hudson United Bank*, 832 F.Supp. at 888; *Honeywell*, 817 F.Supp. at 480; *Mediterranean Golf*, 783 F.Supp. at 842.

This presumption, however, is not dispositive. *See American Tel. & Tel.*, 736 F.Supp. at 1306. The choice of forum by a plaintiff is not the only factor to be considered in a transfer analysis. *See Honeywell*, 817 F.Supp. at 480; *American Tel. & Tel.*, 736 F.Supp. at 1306. Instead, it is simply a preference; it is not a right. *See Honeywell*, 817 F.Supp. at 480; *American Tel. & Tel. Co.*, 736 F.Supp. at 1306. In certain circumstances, the choice of forum by a plaintiff is afforded less weight.

 One situation where deference is curbed is where the plaintiff has not chosen his or her home forum. *See Mediterranean Golf*, 783 F.Supp. at 842; *Piper*, 454 U.S. at 255–56 n. 23, 102 S.Ct. 252; *Lony I*, 886 F.2d at 634. Another situation is where the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit. *See Newcomb*, 847 F.Supp. at 1246; *Honeywell*, 817 F.Supp. at 481 (stating "[w]hen the central facts of a lawsuit occur outside the forum

state, a plaintiff's section of that forum is entitled to less deference."); *see also National Micrographics Sys. v. Canon U.S.A.*, 825 F.Supp. 671, 681 (D.N.J.1993); *American Tel. & Tel.*, 736 F.Supp. at 1306.

 Patricia Tischio argues the initial choice of forum in this action is entitled to deference. *See* Opposition Brief at 1, 7–8. As mentioned, however, the choice of forum by a plaintiff is not dispositive in the transfer analysis, even if venue is proper where the suit was filed. *See Honeywell*, 817 F.Supp. at 480 (quoting *American Tel. & Tel.*, 736 F.Supp. at 1306). To hold otherwise would "collapse any difference between [S]ections 1404 and 1406 ... as well as render Congress' codification of the common law doctrine of *forum non conveniens* meaningless." *Security Sav. Bank, SLA v. Green Tree Acceptance, Inc.*, 703 F.Supp. 350, 353 (D.N.J. 1989) (citations omitted).

Patricia Tischio is not a resident of New Jersey. *See* Complaint; Patricia Tischio Aff. ¶¶ 6(i), 10. The choice of this forum by Patricia Tischio is entitled to less deference. *See Mediterranean Golf*, 783 F.Supp. at 842.

In addition, the only connection between New Jersey and the facts and issues in this case is that Bontex maintains the New Jersey Facility in this state and Patricia Tischio works at that facility. The Complaint demonstrates the events giving rise to the instant action by Patricia Tischio occurred predominantly, if not entirely, in Virginia. The Complaint fails to assert what actionable decisions and/or conduct by the Defendants were made in New Jersey. Because the Defendants have established that the operative facts to this litigation are not centered in New Jersey, the choice of New Jersey as the forum for this litigation is entitled to even less deference. *See Honeywell*, 817 F.Supp. at 483; *American Tel. & Tel.*, 736 F.Supp. at 1306.

### 2. Access to Proof

 The second relevant factor under the private interest analysis is the convenience of the witnesses and the evidence of both parties to the available districts. The Supreme Court has stated:

To examine 'the relative ease of access to sources of proof' and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. 1945 (quoting *Gulf Oil,* 330 U .S. at 508, 67 S.Ct. 839).

### a. *Convenience of the Parties*

As mentioned, none of the parties is based in New Jersey. For example, James Kostelni and Dolores Kostelni are residents of the State of Virginia. *See* James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1. Patricia Tischio is a resident of the State of Connecticut. *See* Complaint; Patricia Tischio Aff. ¶¶ 6(i), 10. Bontex maintains its principal place of business in Virginia. *See* Complaint ¶ 2; James Kostelni Aff. ¶¶ 2–3.

The adjudication of this matter in New Jersey would require all parties to this action, as well as most material witnesses, to travel to New Jersey. "From an economic standpoint it certainly makes sense to conduct a trial ... where only one party and witnesses have to travel rather than where both parties have to travel." *Honeywell,* 817 F.Supp. at 484 (citations omitted). The transfer of this action to Virginia will require only Patricia Tischio to travel to Virginia where she has traveled often to attend meetings of the Bontex Board. *See supra* note 3.

### b. *Convenience of the Material Witnesses*

In the instant matter, the parties do not dispute the general nature of the action, which involves claims for breach of an alleged lifetime employment contract, tortious interference with contract and discrimination. *See* Complaint.

The Defendants argue that, in addition to themselves, most of the witnesses who are knowledgeable about the decision to terminate Patricia Tischio and to close the New Jersey Facility are located in or around Virginia. *See* James Kostelni Aff. ¶¶ 10, 12.

For example, the following members of the Bontex Board are located in or around Virginia: W. James Binnie ("Binnie") (North Carolina), William B. D'Surney ("D'Surney") (Virginia), James Kostelni (Virginia), Frank Mayorshi ("Mayorshi") (Virginia) and Larry Morris ("Morris") (Virginia). *See id.* ¶ 10. Two members of the Bontex Board are residents of Belgium, two are residents of New Jersey, Joseph Raffeto, M.D. ("Raffeto") and Robert J. Weeks ("Weeks"), and Patricia Tischio is a resident of Connecticut. *See id.* ¶ 10.

It is likely that some or all of the members of the Bontex Board may have information relevant to this litigation because they are individuals who decided to close the New Jersey Facility permanently and to terminate Patricia Tischio. *See id.* ¶ 11. It is apparent that the adjudication of this matter in Virginia would be more convenient for Binnie, D'Surney, James Kostelni, Mayorshi and Morris.

In addition, the adjudication of this matter in Virginia will not be more inconvenient for the members of the Bontex Board who are residents of Belgium because they will be required to travel a significant distance regardless of the whether the action is transferred. *See Honeywell,* 817 F.Supp. at 484 (holding transfer of venue from New Jersey to Minnesota was proper where Japanese plaintiff's executives would have to travel thousands of miles from Japan to the United States anyway and stating "Minnesota is no more inconvenient for these witnesses than New Jersey"). Moreover, these individuals already travel to Virginia to attend meeting of the Bontex Board.

Although the adjudication of this matter in Virginia may impose a small burden on Raffeto and Weeks because they are residents of New Jersey, such burden will be minimal considering they have traveled to Virginia often to attend the meetings of the Bontex Board. *See* Dugan Aff. ¶ 7; James Kostelni Aff. ¶ 6. The same can be said for Patricia Tischio. *See supra* note 3.

The Defendants also contend all of the witnesses, with the exception of Patricia Tischio, who are likely to have knowledge about

the employment status of Patricia Tischio at Bontex are located in Virginia. *See* James Kostelni Aff. ¶¶ 12–13. These individuals include David Dugan ("Dugan"), Brenda Clark ("Clark"), Kathy Sue Coffey ("Coffey"), Dawn Moore ("Moore"), Page Barnes ("Barnes"), Charles Kostelni ("Charles Kostelni") and Charles Armstrong ("Armstrong"), all current employees of the Bontex. *See id.* ¶ 12. The James Kostelni Aff. details the positions held by Dugan, Clark, Coffey, Moore, Barnes, Charles Kostelni and Armstrong at Bontex which affords them access to relevant information.[10] *See id.* ¶ 12.

The transfer of this action to Virginia also will make the adjudication of this matter more convenient for these witnesses because they are located in Virginia.

Patricia Tischio contends ten of the twelve witnesses who are critical to her case are New Jersey residents. *See* Patricia Tischio Aff. ¶¶ 6–7, 9–11. These witnesses include: Angelina Montebello ("Montebello"), Susan Gray ("Gray"), Nancy Fittin ("Fittin"), Sheila Kaminski ("Kaminski"), Robert Broege ("Broege"), Gerald Darling ("Darling"), John Frohling ("Frohling"), Grubin, Dennis Lower ("Lower") and Weeks. *See id* . ¶¶ 6, 9. The other two witnesses are Patricia Tischio and her sister, Victoria Tischio ("Victoria Tischio"), who are residents of the State of Connecticut and New York respectively. None of these individuals submitted affidavits in opposition to the Motion to Transfer. Patricia Tischio attempts to detail the alleged connection of Montebello,[11] Gray, Fittin, Kaminski,[12] Victoria Tischio,[13] Broege, Darling, Frohling, Grubin, Lower and Weeks to this action.[14] *See id.* ¶¶ 6, 9.

**10.** The James Kostelni Aff. details the necessity of the following witnesses and lists the positions held and the relevant knowledge afforded by these positions as follows:

> David Dugan, CPA, Assistant Secretary and Controller
> Lexington, VA
> ● Knowledge of Bontex's finances and Supervisor of [Patricia] Tischio.
> Brenda Clark, Director of Human Resources
> Buena Vista, VA
> ● Knowledge of Bontex's personnel policies, hiring of new employees, employee evaluations and duties of employees.
> Kathy Sue Coffey, Manager Sales/Services
> Vesuvius, VA
> ● Knowledge of Bontex's day-to-day sales operations in the Buena Vista, Virginia facility and all invoices generated at the [New Jersey Facility].
> Dawn Moore, Export/Accounts Receivable Coordinator
> Vesuvius, VA
> ● Knowledge of Bontex's finances, including all accounts receivable of the [New Jersey Facility].
> Page Barnes, Sr. Sales/Service Coordinator
> Lexington, VA
> ● Knowledge of Bontex's day-to-day sales operations.
> Charles Kostelni, CPA, Corporate Controller
> Lexington, VA
> ● Knowledge of Bontex's finances and day-to-day sales operations.
> Charles Armstrong, Accounting Manager
> Buena Vista, VA
> ● Knowledge of Bontex's finances, and payment of vendor invoices for goods and services in the United States.
> James Kostelni Aff. ¶ 12.

**11.** Montebello was the former corporate secretary of Bontex. *See* Patricia Tischio Aff. ¶ 6. Patricia Tischio alleged Montebello was also given a promise of lifetime employment by Bontex and has knowledge of the alleged promise by James Kostelni to return the operations of Bontex to New Jersey. *See id.* ¶ 6.

**12.** Gray, Fittin and Kaminski are former caregivers/nurses for Marie Surmonte, who died in June 1996. *See* Patricia Tischio Aff. ¶ 6. Patricia Tischio asserts these individuals were present when Marie Surmonte stated it was the desire of Hugo Surmonte that Patricia Tischio "should always have a job at Bontex in Newark for as long as [she] wanted." *Id.* ¶ 6.

**13.** According to Patricia Tischio, Victoria Tischio was present at a lunch in Newark in October/November 1994, when James Kostelni allegedly stated Patricia Tischio had nothing to worry about as far as her employment at Bontex was concerned. *See* Patricia Tischio Aff. ¶ 6.

**14.** The Patricia Tischio Aff. details the necessity of the following witnesses and lists the positions held and the relevant knowledge afforded by these positions as follows:

> "Robert Broege, Esq., Little Silver, New Jersey. He was [the] former attorney [of Patricia Tischio]. Defendant–J[ames] Kostelni confirmed to him in early 1997 that [Patricia Tischio] had a lifetime employment contract with Defendant–Bontex", Patricia Tischio Aff. ¶ 6(f); "Gerald E. Darling, Esq., Haddonfield, New Jersey. He was [Marie Surmonte's] attorney and is now the lawyer for her estate. He is familiar with the [25 November 1994 Statement] which [Marie Surmonte] left with her will", *id.* ¶ 6(g);

Most of the witnesses identified by Patricia Tischio do not appear to be material witnesses. For example, Montebello does not appear to have personal knowledge of the alleged lifetime employment contract between Patricia Tischio and Bontex. The 24 January 1994 Letter was sent to Patricia Tischio approximately three years after Montebello retired from Bontex. Patricia Tischio does not state Montebello has knowledge of an oral promise by Bontex to Patricia Tischio of lifetime employment. *See id.* Instead, she merely states Montebello was herself given a promise of lifetime employment by Bontex and that Montebello has knowledge of the alleged promise by James Kostelni to return the operations of Bontex to New Jersey. *See id.* ¶ 6.

Gray, Fittin and Kaminski do not appear to have personal knowledge of the facts of this case. They merely can repeat what Marie Surmonte allegedly told them about the wish of Hugo Surmonte for Patricia Tischio to have a job with Bontex for as long as Patricia Tischio wanted. *See id.* ¶ 6. Such testimony appears to be double hearsay. *See* Fed.R.Evid. 801; Fed.R.Evid. 805. Similarly, testimony by Gray about the 25 November 1994 Statement signed by Marie Surmonte to the same effect is unnecessary because the document speaks for itself. *See* Fed.R.Evid. 1002.

Similarly, Broege, Darling and Frohling do not appear to have personal knowledge of the facts of this case. None of them were involved with the facts giving rise to the Complaint and none of them have personal knowledge of the alleged lifetime employment contract and the decision to close the New Jersey Facility. Frohling merely interviewed Montebello. If anything, the testimony of Montebello would be more appropriate. Broege can merely testify as to what James Kostelni allegedly told him about the contract with Patricia Tischio. Finally, although Darling may be familiar with the 24 January 1994 Letter, it appears admission of such testimony may be problematic.

Grubin and Lower also do not appear to have personal knowledge of the facts of this case. Neither of them were involved with the facts giving rise to the Complaint and neither of them have personal knowledge of the alleged contract between Patricia Tischio and Bontex and the decision of Bontex to close the New Jersey Facility. *See* Patricia Tischio Aff. ¶ 9.

The testimony of Victoria Tischio also appears to have little direct relevance to this action. She presumably would testify that James Kostelni allegedly stated Patricia Tischio had nothing to worry about as far as her employment at Bontex was concerned. *See id.* ¶ 6. Such testimony would add little to the central issues of this case, namely, the reasons for the closing of the New Jersey Facility and the alleged discriminatory termination of Patricia Tischio. *See* Complaint.

Besides herself, of the witnesses identified by Patricia Tischio, only Weeks appears to be a material witness. He was involved with the decision to close the New Jersey Facility and to terminate Patricia Tischio. *See* James Kostelni Aff. ¶¶ 10–11. As a member of the Bontex Board, Weeks would be available in Virginia as a witness. Placing the burden of traveling to Virginia on Patricia Tischio and Weeks would not be unreasonable since both have traveled there often to

---

"John Frohling, Esq., Roseland, New Jersey. Mr. Frohling, [the] former attorney of [Patricia Tischio], interviewed witnesses on [the] behalf [of Patricia Tischio], including Angela Montebello", *id.* ¶ 6(h);

\*　　\*　　\*　　\*　　\*　　\*

"Simon Grubin, Passaic, New Jersey. Bontex employee. Mr. Grubin works at the [New Jersey Facility] and has knowledge regarding the progressive closing of said facility and the deteriorating, unsafe, and uncomfortable working conditions there, and the gradual undermining of that facility and [the] job responsibilities [of Patricia Tischio]", *id.* ¶ 9(j);

"Dennis E. Lower, Newark, New Jersey. He is the Executive Director of University Heights Science Park, the purchaser of the [New Jersey Facility]", *id.* ¶ 9(k);

"Robert Weeks, Sea Girt, New Jersey, Director of Bontex. Mr. Weeks told [Patricia Tischio] that it was Defendant–J[ames] Kostelni's plan all along to close the [New Jersey Facility] even though he was making promises and assurance both to [Patricia Tischio] and [her] parents that [Patricia Tischio] would have a job for life." *Id.* ¶ 9(*l*).

participate in the meetings of the Bontex Board. *See supra* note 3.

Based on the residence of a majority of material witnesses in the Western District of Virginia, the private interests strongly favor transfer to the Western District of Virginia.

#### c. *Location of the Relevant Documents*

It appears the weight of documentary evidence relevant to this action is also located in the Western District of Virginia. *See* Dugan Aff. ¶ 4.

All of the personal financial records of Dolores Kostelni are located in Virginia.[15] *See* Dolores Kostelni ¶ 3. In addition, most of the Bontex documents are located in Virginia. For example, all of the personnel documents, including those related to Patricia Tischio, are located in Virginia. *See* Dugan Aff. ¶ 5. The minutes of the meetings of the Bontex Board and the Executive Committee of Bontex are also located in Virginia. *See id.* ¶ 7. Furthermore, the financial statements, balance sheets and corporate resolutions of Bontex are located in Virginia. *See id.* ¶ 8. Finally, virtually all of the corporate correspondence of Bontex and documents relating to the closing of the New Jersey Facility are located in Virginia. *See id.* ¶¶ 9–10.[16]

Patricia Tischio contends the fact most relevant documents are located in Virginia "is of virtually no importance" because the Defendants "can easily transport all necessary documents for discovery and trial to New Jersey." Opposition Brief at 10. Such contention is without merit. "Although it is possible to move documents to New Jersey for trial, such efforts will increase the direct and indirect costs of and inconvenience associated with litigation in this District." *Honeywell*, 817 F.Supp. at 486. The presence of the bulk of the relevant materials in Virginia favors the transfer of the action. *See Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 290 (D.Del.1986).

Based on the presence of the majority of documentary evidence in Virginia, the private interests strongly favor transfer to the Western District of Virginia.

#### d. *Expense of Maintaining the Action*

The Defendants also argue the adjudication of this matter in New Jersey would be costly for the Defendants and would disrupt the normal business workings of Bontex, especially if its employees are required to travel to New Jersey for depositions or trial. *See* James Kostelni Aff. ¶¶ 14–15.

Patricia Tischio contends the financial burden on her of litigating the action in Virginia will be much greater than the burden imposed upon the Defendants if the action is litigated in New Jersey. *See* Patricia Tischio Aff. ¶ 13. Patricia Tischio, however, has failed to indicate what expenses will be affected; she has not established it will be significantly more expensive to prosecute her claims in the Western District of Virginia and she has not established she is unable to carry such an expense. *See Shore*, 964 F.Supp. at 157 (transferring action where plaintiff did not offer evidence that it was financially or physically unable to attend proceedings in Oklahoma). As mentioned, she has often traveled to Virginia to attend the meetings of the Bontex Board. *See supra* note 3.

The Defendants have carried the burden of showing by a strong preponderance the balance of private interests favors transfer of this action to the Western District of Virginia. Although Patricia Tischio does not bear the burden of persuasion in the Motion for Transfer, she has failed to persuasively contest the Western District of Virginia as the more convenient and appropriate forum. Given the balance presented, this is not a case where transfer would merely switch the inconveniences from the Defendants to Patricia Tischio. Transfer to the Western District of Virginia, the forum with the most significant nexus and where the majority of wit-

---

**15.** The affidavit of James Kostelni does not indicate where he maintains relevant documents, if any. It appears, however, that because he is a resident of Virginia, relevant documents would be located in Virginia.

**16.** Although some of these documents may not be relevant to the issues involved in this case, Patricia Tischio nevertheless has requested copies of many of them in her discovery demands. *See* Exhibit D to Moving Brief.

nesses and documentary evidence is located, will enhance the convenience of the majority of the relevant witnesses and parties and will be in the interests of justice.

### b. *Public Interest*

 The public interest factors relevant to a determination of the propriety of transfer include

the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home;' the interest in having a trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems and conflicts of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Lony I,* 886 F.2d at 640 (quoting *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 252). Evaluation of the public interest factors include consideration of "the locus of the alleged culpable conduct ... and the connection of the conduct to plaintiff's chosen forum." *Lacey I,* 862 F.2d at 48 (quoting *Van Cauwenberghe,* 486 U.S. at 529, 108 S.Ct. 1945); *see also Lony II* 935 F.2d at 612. It appears Virginia has a greater interest in this litigation than New Jersey.

### 1. *Local Interests*

As mentioned, the actions of the Defendants allegedly giving rise to the instant litigation occurred predominantly, if not entirely, in Virginia. None of the allegedly actionable decision and/or conduct by the Defendants appears to have transpired in New Jersey. The only connection with New Jersey appears to be that Bontex used to be a New Jersey corporation, the New Jersey Facility is located here and Patricia Tischio works at that facility.

This minimal asserted connection with New Jersey does not impact the transfer analysis. *See Kirschner Bros. Oil, Inc. v. Pannill,* 697 F.Supp. 804, 807 (D.Del.1988) ("[T]he incorporation of some of the [d]efendants in Delaware is of little consequence" in determining whether to transfer venue.) Accordingly, Virginia, the forum with the more

significant contacts with the events resulting in the instant litigation, has a strong public interest in adjudicating this dispute. *See Lacey I,* 862 F.2d at 48; *Honeywell,* 817 F.Supp. at 486; *Mediterranean Golf,* 783 F.Supp. at 849–50.

### 2. *Burden of Jury Duty*

The burden of jury duty "ought not to be imposed upon the people of a community which have no relation to the litigation." *Honeywell,* 817 F.Supp. at 486 (quoting *Ferens v. John Deere Co.,* 494 U.S. 516, 529–30, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (citing *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839)). Patricia Tischio has made a demand for a jury trial in the instant matter. *See* Complaint at p. 10. New Jersey jurors should not be burdened with adjudicating a matter concerning decisions and/or conduct which occurred almost exclusively outside the State of New Jersey. *See Pain,* 637 F.2d at 792 (stating jury duty should not be imposed, nor local dockets clogged by, cases with little relation to jurisdiction). Accordingly, this factor, as well, weighs in favor of transfer to the Western District of Virginia.

### 3. *Applicable Law*

An important public interest factor is the desire to have the case tried before judges familiar with the applicable law. *See Hudson United Bank,* 832 F.Supp. at 888. Patricia Tischio has alleged state law claims for breach of contract, promissory estoppel, tortious interference with contract and discrimination in violation of the New Jersey Law Against Discrimination. *See* Complaint ¶¶ 4–27. The parties are in dispute over the applicable law and, thus, whether transfer would aid in the administration of justice.

A Federal court in a diversity action must apply the conflict of law principles of the forum state. *See LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir.1996) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *Fedorczyk v. Caribbean Cruise Lines, Ltd.,* 82 F.3d 69, 73 (3d Cir.1996) (citing same); *General Ceramics Inc. v. Firemen's Fund Ins. Cos.,* 66 F.3d 647, 652 (3d Cir.1995) (citations omitted); *Lacey II,* 932

F.2d at 187; *Pancza v. Remco Baby, Inc.*, 761 F.Supp. 1164, 1168 (D.N.J.1991); *Hoffman Equip., Inc. v. Clark Equip., Co.*, 750 F.Supp. 1222, 1229 (D.N.J.1990), *aff'd*, 935 F.2d 1281 (3d Cir.1991). Therefore, New Jersey conflict of laws principles will determine which law governs the claims asserted by Patricia Tischio.

Under New Jersey conflicts-of-law principles, the law of the state that has the most significant connections with the parties and the action applies. *See Gilbert Spruance v. Pennsylvania Manufacturers'*, 134 N.J. 96, 102–03, 629 A.2d 885 (1993). The Defendants argue Virginia law governs the instant dispute. *See* Moving Brief at 19–20; Reply at 9. Patricia Tischio contends New Jersey law applies. *See* Opposition Brief at 12. As indicated, Virginia has more significant contacts with this litigation than New Jersey. Although not adequately briefed so that a determination can be made, it appears Virginia law will likely apply to most of the issues involved in this case. Even if New Jersey law were applicable, however, the other private and public factors weigh heavily in favor of transfer to the Western District of Virginia, the more convenient forum.

#### c. *Interests of Justice*

Another significant criteria in determining the advisability of transfer is whether transfer would promote the interests of justice. *See Jumara*, 55 F.3d at 878–880; *Honeywell*, 817 F.Supp. at 487. As discussed above, given the location of a number of relevant witnesses in Virginia, the majority of the documentary evidence located in Virginia and the lack of a strong nexus between the allegations and New Jersey, the enhanced convenience offered by trial in the Western District of Virginia overcomes the limited deference given to the choice by Patricia Tischio of New Jersey as the forum for the litigation of this matter.

#### *Conclusion*

For the foregoing reasons, the Motion to Transfer is granted; the action is transferred to the Western District of Virginia.

### OPINION

Currently pending is a timely motion for reargument (the "Motion for Reargument") filed by the plaintiff, Patricia S. Tischio ("Patricia Tischio"), pursuant to Rule 59(e) and/or Rule 60(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(g). The Motion for Reargument seeks to vacate the 29 June 1998 order that transferred the action (the "Order of Transfer") to the United States District Court for the Western District of Virginia (the "Western District of Virginia"), pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"). In the alternative, the Motion for Reargument seeks a stay of the Order of Transfer pending appeal and certification of the Order of Transfer pursuant to 28 U.S.C. § 1292(b) ("Section 1292(b)").[1]

For the reasons set forth below, the Motion for Reargument is denied in its entirety.

#### *Background*

##### A. *Procedural History*

On 11 March 1998, Patricia Tischio filed a complaint (the "Complaint") against the Defendants in the Superior Court of the State of New Jersey. The Complaint asserts claims for, among other things, breach of an

---

1. In support of the Motion for Reargument, Patricia Tischio submitted: Affidavit of Patricia Tischio in Support of Motion for Reconsideration, dated 9 July 1998 (the "Patricia Tischio Supplemental Aff."), attaching Exhibits A through E; Affidavit of Susan Gray (the "Gray Aff."); Affidavit of Nancy Fittin (the "Fittin Aff."); Affidavit of Sheila Kaminski (the "Kaminski Aff."); Affidavit of Melissa Feldman Michalsky (the "Michalsky Aff."), attaching Exhibits A through B; and Brief of Plaintiff, Patricia Tischio, in Support of Motion for Reargument (the "Supplemental Brief").

 The defendants, Bontex, Inc. ("Bontex"), James C. Kostelni ("James Kostelni") and Dolores S. Kostelni ("Dolores Kostelni") (collective-

ly, the "Defendants") were given the opportunity to submit whatever they deemed appropriate concerning the Motion for Reargument. Counsel for Bontex "concluded the [Motion for Reargument] raises no issues which warrant a substantial response." Letter, dated 16 July 1998, from counsel to Bontex. Counsel for Dolores Kostelni stated the Motion for Reargument "fails to disclose the existence of any material issue which warrants substantial response." Letter, dated 16 July 1998, from counsel to Dolores Kostelni. The counsel for the James Kostelni took a similar position and so advised the Office of the Clerk of the Court.

alleged lifetime employment contract, tortious interference with contract and discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq. See* Complaint.

On 13 April 1998, the Defendants removed the action to this court by filing a notice of removal (the "Notice of Removal"). *See* Notice of Removal. On 15 April 1998, Bontex filed an amended notice of removal (the "Amended Notice of Removal"). *See* Amended Notice of Removal.

On 5 May 1998, Bontex filed an answer (the "Bontex Answer") to the Complaint. *See* Bontex Answer. On the same day, James Kostelni filed an answer (the "James Kostelni Answer") to the Complaint. *See* James Kostelni Answer. On 6 May 1998, Dolores Kostelni filed an answer (the "Dolores Kostelni Answer") to the Complaint and raised the defense of lack of personal jurisdiction. *See* Dolores Kostelni Answer.

At a conference on 15 April 1995, the Defendants indicated their intent to file a motion to transfer the action to the Western District of Virginia (the "Motion to Transfer"). A month later, by letter, dated 11 May 1998, (the "Patricia Tischio 11 May 1998 Letter") Patricia Tischio advised that the parties had agreed to a briefing schedule, apparently comfortable to all parties, in connection with the Motion to Transfer. *See* Patricia Tischio 11 May 1998 Letter. She further advised that all briefs would be submitted by 19 June 1998. *Id.*

After the Motion to Transfer had been fully briefed by the parties,[2] Patricia Tischio submitted a letter, dated 22 June 1998, (the "Patricia Tischio 22 June 1998 Letter") seeking permission to file a sur-reply brief in further opposition to the Motion to Transfer. *Id.* The Patricia Tischio 22 June 1998 Letter

is significant because of what it says and what it does not say.

Plaintiff hereby requests permission to submit a short sur-reply in connection with said motion [the Motion to Transfer]. The reason for this request is that Defendants, in their Reply Memorandum of Law, raised new issues as to which Plaintiff should be afforded an opportunity to respond. First, Defendants *raised,* for the first time, *the argument* that this Court lacks personal jurisdiction over Defendant Dolores Kostelni. Second, Defendants *raise arguments* relating to the admissibility and relevance of the testimony of Plaintiff's non-party witnesses.

Plaintiff respectfully requests leave to file a *short letter brief* in reply to Defendants' newly-raised arguments.

Patricia Tischio 22 June 1998 Letter (emphasis added).

The Patricia Tischio 22 June 1998 Letter clearly seeks leave to file "a short letter brief" to respond to so-called newly raised arguments. These arguments are legal in nature: jurisdiction over Dolores Kostelni and admissibility and relevance of certain testimony of non-party witnesses. All that was sought was the opportunity to *brief* these issues. No request was made to submit additional facts; no suggestion was made that additional facts were necessary; no suggestion was made that the court did not have all the facts necessary to decide the motion.

Because leave to submit additional data or detail was not sought and because additional briefing was not necessary, the request to submit a "short letter brief" in reply to these so-called newly raised issues was denied. *See* letter from the Court, dated 25 June 1998.

The Patricia Tischio 22 June 1998 Letter is also significant because it undercuts many of

---

2. In support of the Motion to Transfer, the Defendants submitted: Defendants' Memorandum of Law in Support of Their Joint Motion to Transfer Venue to the United States District Court for the Western District of Virginia (the "Moving Brief"); Affidavit of James C. Kostelni (the "James Kostelni Aff."); Affidavit of Dolores S. Kostelni (the "Dolores Kostelni Aff."); Affidavit of David Dugan (the "Dugan Aff."); and Defendants' Reply Memorandum of law in Support

of Their Motion to Transfer Venue to the United States District Court for the District of Virginia (the "Reply Brief"), attaching Exhibit A.

In opposition to the Motion to Transfer, Patricia Tischio submitted: Plaintiff's Memorandum of Law in Opposition to the Motion to Transfer Venue (the "Opposition Brief"); and Affidavit of Patricia Surmonte Tischio (the "Patricia Tischio Aff."), attaching Exhibits A through C.

the arguments made by Patricia Tischio in the Motion for Reargument. For example, the last sentence of paragraph six of her affidavit submitted in support of the Motion for Reargument states: "I attempted, through counsel, to convey these facts to the Court in reply to Defendant's responsive motion filings, but was precluded." Patricia Tischio Supplemental Aff. at ¶ 6. As indicated above, there was no request, proffer or even suggestion that Patricia Tischio was attempting to, or needed to, or wanted to, offer additional data or detail in opposition to the Motion to Transfer.

As described more fully below, although Patricia Tischio now submits additional data and detail in support of the Motion for Reargument, these data or detail were not before the court for consideration with regard to the Motion to Transfer. Moreover, none of these data constitutes "new evidence" to justify reconsideration pursuant to either Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure. In addition, no explanation was offered to explain why these data and detail were withheld from the court when the Motion to Transfer was considered.

On 29 June 1998, a forty-seven page letter-opinion (the "29 June 1998 Letter–Opinion") and the Order of Transfer were issued granting the Motion to Transfer and transferring the action to the Western District of Virginia pursuant to Section 1404(a).[3] After reviewing the 29 June 1998 Letter Opinion, Patricia Tischio now attempts to forward additional data and detail as a basis to suggest this court failed to consider certain facts when issuing the Order of Transfer.

In paragraph two of her supplemental affidavit, Patricia Tischio states in part "a number of crucial facts were, I believe, not before the Court or were overlooked." Patricia Tis-

chio Supplemental Aff. at ¶ 2. Moreover, in her supplemental brief, Patricia Tischio argues "the Court overlooked the facts pertaining to Dolores' (sic)[Kostelni's] New Jersey contacts and the fact that Defendant–Bontex pays plaintiff's travel expenses when plaintiff travels to Virginia for Board Meetings. These facts are set forth in affidavit of Patricia Surmonte Tischio dated July 9, 1998, submitted herewith." Supplemental Brief at 3. As these two statements indicate, these data and detail were not previously before the court. This is true with much of the additional data and detail which were submitted in the affidavits in support of the Motion for Reargument. *See* Supplemental Brief at 5. ("Their [the witnesses'] proposed testimony, *now before the Court* in the form of Affidavits appended to Plaintiff's more recent Affidavit, makes clear . . . .") (emphasis added).

As indicated previously, the argument that Patricia Tischio was blocked in her attempt to submit additional data or detail is simply wrong. *See* Affidavit of Melissa Feldman Michalsky at ¶ 3 ("Plaintiff was deprived of an opportunity to respond") and Supplemental Brief at 7 ("Plaintiff had no opportunity to submit factual material regarding Dolores' (sic)[Kostelni's] contacts with this form.").

As explained, at no time did Patricia Tischio seek to file affidavits or other appropriate documentation containing additional data or detail. She did not suggest she had in her possession additional data, detail or documents necessary for the disposition of the Motion to Transfer or that she was prevented from discovering or offering such data or detail in opposition to the Motion to Transfer. *See* Patricia Tischio 22 June 1998 Letter (requesting opportunity to submit "a short letter *brief*" regarding issues of personal

---

**3.** The last sentence of the Order of Transfer incorrectly states the action was transferred pursuant 28 U.S.C. § 1404(a) and § 1406(a) ("Section 1406"). *See* Order of Transfer at 2. The notice of motion for the Motion to Transfer requested transfer pursuant to § 1404(a). The 29 June 1998 Letter–Opinion recognized this; and the Motion to Transfer was decided based upon § 1404(a). *See* 29 June 1998 Letter–Opinion at 2 ("The Defendants have filed a motion to transfer . . . , pursuant to 28 U.S.C. § 1404(a)."); *Id.* at 18 ("Instead, the entire action will be transferred to

one district in accordance with § 1404(a) for the convenience of the parties and witnesses and in the interest of justice."); Order of Transfer at 1 (This matter having come on before the Court by way of motion . . . pursuant to 28 U.S.C. § 1404(a)). As well, in the first sentence of Point I of her argument in the Supplemental Brief, Patricia Tischio acknowledges the action was transferred pursuant to Section 1404(a), not Section 1406(a). *See* Supplemental Brief at 3 ("In deciding that this matter should be transferred pursuant to 28 U.S.C. § 1404(a) . . . .").

jurisdiction over Dolores Kostelni and concerning admissibility and relevance of testimony).

There was never a suggestion that Patricia Tischio did not have an adequate period of time in which to oppose the Motion to Transfer. On the contrary, her attorney wrote to the court advising of an agreement among the parties on a schedule with regard to submission of briefing concerning the Motion to Transfer. *See* 11 May 1998 letter.

### B. *Facts* [4]

Patricia Tischio is a resident of the State of Connecticut. *See* Complaint; Patricia Tischio Aff. ¶¶ 6(i), 10. Bontex is a publically owned corporation that is incorporated in the State of Virginia and maintains its principal place of business in Buena Vista, Virginia. *See* Complaint ¶ 2; James Kostelni Aff. ¶¶ 2–3. James Kostelni is a resident of the State of Virginia and is the President, Chief Executive Officer and Chairman of the Board of Directors of Bontex.[5] *See* Complaint ¶ 3; James Kostelni Aff. ¶ 2. Dolores Kostelni is a resident of the State of Virginia. *See* Dolores Kostelni Aff. ¶ 1. She is married to James Kostelni and is the sister of Patricia Tischio. *See* Complaint ¶ 3; James Kostelni Aff. ¶ 1; Dolores Kostelni Aff. ¶ 1. Dolores Kostelni is neither a director, nor an officer nor an employee of Bontex. *See* Dolores Kostelni Aff. ¶ 2.

Bontex is the successor corporation to Georgia–Bonded Fibers, Inc. ("Georgia–Bonded"). *See* Complaint ¶ 2. Georgia–Bonded was a manufacturing corporation founded in 1934 by the father of Patricia Tischio, Hugo N. Surmonte ("Hugo Surmonte"). It was incorporated under the laws of the State of New Jersey. *See id.* ¶¶ 1–2; Patricia Tischio ·Aff. ¶ 2. According to Patricia Tischio, Georgia–Bonded/Bontex maintained its principal place of business in Newark, New Jersey until October 1997. *See* Complaint ¶ 2; Patricia Tischio Aff. ¶ 2. The

Defendants dispute the assertion that Georgia–Bonded/Bontex maintained its principal place of business in Newark until 1997. *See* Reply Brief at 11 n. 1.

Bontex manufactures and markets blastomeric saturated cellulose fiberboard that is used in a variety of consumer products. *See* James Kostelni Aff. ¶ 4. The sole manufacturing facility of Bontex is located in Buena Vista, Virginia (the "Virginia Facility"). *See id.* ¶ 5. Approximately ninety-seven individuals are employed by Bontex at the Virginia Facility. *See id.* ¶ 5. The majority of the corporate records of Bontex are located at the Virginia Facility. *See* Dugan Aff. ¶¶ 4–6, 8–10.

Bontex currently maintains a sales office and warehouse facility in Newark, New Jersey (the "New Jersey Facility"). *See* James Kostelni Aff. ¶ 8. Two full-time staff and one part-time warehouse employee are employed by Bontex at the New Jersey Facility. *See id.* ¶ 8. The New Jersey Facility is scheduled to be permanently closed by Bontex before the end of 1998. *See id.* ¶ 8. The closure of this facility is one of the reasons for this dispute. *See* Complaint.

In 1989, allegedly at the request of Hugo Surmonte, Patricia Tischio joined Bontex as a full-time employee at the New Jersey Facility. *See id.* ¶ 4; Patricia Tischio Aff. ¶ 3. She later became a member of the Bontex Board of Directors (the "Bontex Board").[6] *See* Complaint ¶ 1; James Kostelni Aff. ¶ 8. According to Patricia Tischio, Hugo Surmonte and James Kostelni promised that, upon joining Bontex, she would assume the positions of Corporate Secretary and Office Manager and would be trained in those capacities. *See* Patricia Tischio Aff. ¶ 4. Patricia Tischio also asserts Hugo Surmonte promised her that, if she left her then current employment to work for Bontex, she would have "employment with Bontex in Newark or the vicinity for as long as [she] desired." *Id.* ¶ 3; *see* Complaint ¶¶ 4, 6.

---

4. The relevant facts are taken from the 29 June 1998 Letter–Opinion.

5. It is unclear from the Complaint whether James Kostelni is sued in his individual capacity and/or in his capacity as President, Chief Execu-

tive Officer and Chairman of the Board of Directors of Bontex. *See* Complaint.

6. As a member of the Bontex Board, Patricia Tischio has traveled to Virginia for various meetings. *See* James Kostelni Aff. ¶ 6; Dugan Aff. ¶ 7.

Patricia Tischio contends that, following the death of Hugo Surmonte in October 1994, James Kostelni began transferring the important operations of Bontex from the New Jersey Facility to the Virginia Facility. *See* Complaint ¶ 9; Patricia Tischio Aff. ¶ 5. Patricia Tischio contends her responsibilities at Bontex were diminished because of the transfer of these operations. *See* Patricia Tischio Aff. ¶ 5.

On 25 June 1997, a meeting of the Bontex Board was held in Lexington, Virginia. *See* James Kostelni Aff. ¶ 8. At the meeting, all members of the Bontex Board, with the exception of Patricia Tischio, voted to close the New Jersey Facility permanently. *See id.* ¶¶ 8, 11. Patricia Tischio attended the meeting but abstained from voting on the closure of the New Jersey Facility. *See id.* ¶ 8. On the same day, Patricia Tischio was advised by Bontex that her position would be terminated, effective January 1998. *See* Complaint ¶ 9; Patricia Tischio Aff. ¶ 5. It appears she is still a member of the Bontex Board.

Patricia Tischio contends her termination is, among other things, a breach of the alleged lifetime employment contract she had with Bontex. *See* Complaint ¶¶ 4–12. She also contends her termination is discriminatory because Bontex has decided to retain as an employee in New Jersey an individual employed at the New Jersey Facility, Simon Grubin ("Grubin"), who is male and younger than she. *See id.* ¶¶ 17–20.

### C. *The 29 June 1998 Letter–Opinion*

In arguing for the transfer of this action to the Western District of Virginia, the Defendants contended that forum is more convenient for the majority of the parties and witnesses and such transfer would best serve the interests of justice. *See* Moving Brief at 1. The Defendants also argued most of the sources of proof are located in the Western District of Virginia. *See id.*

In arguing against the transfer of this action to the Western District of Virginia, Patricia Tischio argued that such transfer would be improper because twelve potential non-party witnesses reside in or near New Jersey and also because she contends New Jersey law will govern the issues involved in the action. *See* Opposition Brief at 1.

In the 29 June 1998 Letter–Opinion, it was determined that both the private and public interests favored the transfer of the action. *See* 29 June 1998 Letter–Opinion. It was observed that the choice of this forum by Patricia Tischio was entitled to less deference because she is not a resident of New Jersey. *See id.* at 28. In addition, it was determined that the choice of this forum by Patricia Tischio was entitled to even less deference because the events giving rise to the instant action occurred predominantly, if not entirely, in Virginia—the state where the decisions to close the New Jersey Facility and to terminate Patricia Tischio were made. *See id.*

In the 29 June 1998 Letter–Opinion it was also observed that none of the parties is based in New Jersey. Accordingly, the adjudication of this matter in this district would require all parties to travel to New Jersey. *See id.* at 29–30.

In the 29 June 1998 Letter–Opinion it was determined that the weight of documentary evidence relevant to this action is located in the Western District of Virginia. *See id.* at 39–40. Moreover, it was determined that a significant number of material witnesses were located in Virginia. *See id.* at 30–39.

Finally, because the events giving rise to the instant action occurred predominantly, if not entirely, in Virginia, it was determined that the public interests also favored a transfer of the action. *See id.* at 42–47.

### *Discussion*

Patricia Tischio has moved for reargument of the Order of Transfer pursuant to Rule 59(e) ("Rule 59(e)") and/or Rule 60(b) ("Rule 60(b)") of the Federal Rules of Civil Procedure. The standard for a Rule 59(e) motion is analogous to the standard for a Rule 60(b) motion, *see Robinson v. Red Rose Communications, Inc.*, No. 97–6497, 1998 WL 221028, at *3 (E.D.Pa. May 5, 1998) (citing 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2808, at 86 (2d ed.1995)); both standards will be discussed.

## A. *Motion for Reconsideration Standard of Review*

Rule 59(e) provides:

(e) Motion to Alter or Amend Judgment. Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

Fed.R.Civ.P. 59(e). Rule 59(e) permits a plaintiff to move to alter or amend a judgment within ten days of entry of an order. *See id.; Database America v. Bellsouth Advertising & Publishing,* 825 F.Supp. 1216, 1219–20 (D.N.J.1993). Local Civil Rule 7.1(g) of the United States District Court for the District of New Jersey ("Local Rule 7.1(g)")[7] requires the moving party to set forth "concisely the matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked." Local Rule 7.1(g); *see North River Ins. Co. v. CIGNA Reins. Co.,* 52 F.3d 1194, 1218 n. 38 (3d Cir.1995); *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.,* 998 F.Supp. 447, 459 (D.N.J.1998); *Database,* 825 F.Supp. at 1220.

▆▆▆ A motion for reconsideration pursuant to Rule 59(e) is designed to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). As such, a Rule 59(e) motion may be made for only one of three reasons: (1) an intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *See North River,* 52 F.3d at 1218; *Elizabethtown Water Co.,* 998 F.Supp. at 459; *Smith v. City of Chester,* 155 F.R.D. 95, 96–97 (E.D.Pa.1994); *Database,* 825 F.Supp. at 1224; *Bermingham v. Sony Corp. of Am., Inc.,* 820 F.Supp. 834, 856 (D.N.J.1992), *aff'd,* 37 F.3d 1485 (3d Cir. 1994); *Weyerhaeuser Corp. v. Koppers Co.,* 771 F.Supp. 1406, 1419 (D.Md.1991).

▆▆▆ A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised in connection with an earlier motion. *See Database,* 825 F.Supp. at 1220; *Bermingham,* 820 F.Supp. at 856; *Weyerhaeuser,* 771 F.Supp. at 1419. "[A] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *In re Christie,* 222 B.R. 64, 66 (Bankr. D.N.J.1998) (citing *Database Am.,* 825 F.Supp. at 1220). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *Database,* 825 F.Supp. at 1220; *G–69 v. Degnan,* 748 F.Supp. 274, 275 (D.N.J. 1990); *see also Elizabethtown Water Co.,* 998 F.Supp. at 459; *Egloff v. New Jersey Air Nat'l Guard,* 684 F.Supp. 1275, 1279 (D.N.J. 1988) (denying motion for reconsideration where plaintiff failed to cite any pertinent case law or fact court may have overlooked). Nor is a motion for reconsideration properly grounded on a request that a court rethink a decision already made. *See Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993). A party may not submit evidence which was available to it prior to the issuance of the challenged order. *See Smith,* 155 F.R.D. at 97. All of the data and detail in support of the Motion for Reargument were available and could have been submitted for the Motion to Transfer—only a portion was so submitted.

When a motion for reconsideration raises only a disagreement by a party with a decision of the court, that dispute "should be dealt with in the normal appellate process, not on a motion for reargument" pursuant to Local Rule 7.1(g). *Database,* 825 F.Supp. at 1220; *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 163

---

7. Local Rule 7.1(g) provides:

(g) Motions for Reargument. A motion for reargument shall be served and filed within 10 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. There shall be served with the notice a brief setting forth concisely the matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked. No oral argument shall be heard unless the Judge or Magistrate Judge grants the motion and specifically directs that the matter shall be reargued orally.

Local Rule 7.1(g).

(D.N.J.1988); *see Bermingham,* 820 F.Supp. at 856.

### B. *Standard of Review for Rule 60(b) Motion*

▮ Rule 60(b) provides, in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . .

Fed. R. Civ. Pro. 60. A motion filed pursuant to Rule 60(b) is "addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir.1981); *see Dietsch v. U.S.,* 2 F.Supp.2d 627, 630–31 (D.N.J. 1998); *Smith v. Holtz,* 879 F.Supp. 435, 438 (M.D.Pa.1995), *aff'd,* 87 F.3d 108 (3d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). Rule 60(b), however, "does not confer upon the district courts a 'standardless residual of discretionary power to set aside judgments.'" *Moolenaar v. Government of the Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987). Rather, relief under Rule 60(b) is available only under such circumstances that the " 'overriding interest in the finality and repose of judgments may properly be overcome.'" *Harris v. Martin,* 834 F.2d 361, 364 (3d Cir.1987) (quoting *Martinez–McBean v. Government of the Virgin Islands,* 562 F.2d 908, 913 (3d Cir.1977)); *see Moolenaar,* 822 F.2d at 1346; *Wilson v. Fenton,* 684 F.2d 249, 251 (3d Cir.1982); *Mayberry v. Maroney,* 529 F.2d 332, 337 (3d Cir.1976) (Gibbons, J., concurring); *Smith,* 879 F.Supp. at 438. "The remedy provided by Rule 60(b) is 'extraordinary, and [only] special circumstances may justify granting relief under it.'" *Moolenaar,* 822 F.2d at 1346 (citations omitted). As explained in *Kock v. Government of the Virgin Islands,* 811 F.2d 240 (3d Cir.1987),

Rule 60(b) must be applied '[s]ubject to the propositions that the finality of judgments is a sound principle that should not lightly be cast aside, [and] that clause (6) is not a substitute for appeal. . . .' It is intended to be a means for accomplishing justice in extraordinary situations, and so confined, does not violate the principle of the finality of judgments.

*Id.* at 246 (citations omitted).

### C. *Application of Law to Facts of Case*

▮ In the Supplemental Brief, Patricia Tischio states "the Court overlooked significant facts presented by the Plaintiff in the Affidavit of Patricia Tischio, dated May 20, 1998 and overlooked controlling law." Supplemental Brief at 2. As such, Patricia Tischio appears to be seeking relief pursuant to Rule 59(e) and Rule 60(b) to "correct manifest errors of law or fact." *Harsco,* 779 F.2d at 909; *see North River,* 52 F.3d at 1218; *Elizabethtown Water Co.,* 998 F.Supp. at 459. In addition, because she has submitted additional affidavits in connection with the Motion for Reargument, it appears Patricia Tischio claims to be presenting newly discovered evidence. However, there is nothing to establish, much less suggest, such new evidence was newly discovered which through the exercise of due diligence could neither have been discovered nor submitted in connection with the Motion to Transfer.

A review of the Supplemental Brief reveals that Patricia Tischio is merely expressing her disagreement with the 29 June 1998 Letter–Opinion and requesting that the Order of Transfer be reconsidered. As mentioned, a motion for reargument should not be grounded upon a request that a court rethink a

decision already made. *See Glendon* 836 F.Supp. at 1122.

Patricia Tischio contends she was precluded from conveying certain facts which were allegedly relevant to the Motion to Transfer because her request to submit a letter brief was denied. *See* Patricia Tischio Supplemental Aff. ¶ 6. This contention is not accurate; it is misleading. In fact, Patricia Tischio never requested an opportunity to submit additional data or detail. As mentioned, the Patricia Tischio 22 June 1998 Letter merely requested permission to file a letter brief, not additional data or detail. *See* Patricia Tischio 22 June 1998 Letter. Facts and evidence may only be submitted by way of an affidavit or other appropriate documentation. The legal issues involved had been adequately briefed by the parties. Therefore, the request by Patricia Tischio to submit a letter brief in reply was denied. *See* Exhibit B to Michalsky Aff. At no time prior to the issuance of the Order of Transfer did Patricia Tischio request an opportunity to submit additional affidavits or any other documentation.[8]

The Supplemental Brief asserts "the Court's June 29 letter-opinion erroneously overlooked the crucial New Jersey witnesses and evidence in this case." Supplemental Brief at 5. To the contrary, the 29 June 1998 Letter–Opinion expressly addressed and re-

jected the argument by Patricia Tischio that the location of her proffered witnesses warranted the adjudication of this matter in New Jersey. *See* 29 June 1998 Letter–Opinion at 34–39. It was observed that, based upon the submissions for the Motion to Transfer, most of the witnesses proffered by Patricia Tischio did not have personal knowledge of the promises Hugo Surmonte and James Kostelni allegedly made to her. The fact that Patricia Tischio stated in her original affidavit that Gray, Fittin and Kaminski "also have knowledge of Defendant-J. Kostelni's promises to my mother to the effect that he would not close the [New Jersey F]acility or terminate my employment at Bontex" is not sufficient. *See* Patricia Tischio Aff. ¶ 6. This statement did not indicate that these individuals had first-hand knowledge of the alleged promises by James Kostelni to Marie Surmonte.[9] Moreover, none of these witnesses submitted affidavits in opposition to the Motion to Transfer.

In an attempt to support the Motion for Reargument, Patricia Tischio submitted affidavits of Gray, Fittin and Kaminski. *See* Gray Aff.; Fittin Aff.; Kaminski Aff. None of these affidavits, however, sets forth information that was unavailable to Patricia Tischio at the time she submitted opposition to the Motion to Transfer. *See id.* In addition, Patricia Tischio has not alleged she was un-

---

8. Patricia Tischio contends the Defendants raised several issues in the Reply Brief which were not raised in the Moving Brief and therefore she did not have an opportunity to respond to them. *See* Patricia Tischio Aff. ¶¶ 5–6; Michalsky Aff. ¶ 3.

On review, this argument rings hollow. For example, Patricia Tischio knew Dolores Kostelni had asserted in her answer that she was not subject to jurisdiction in New Jersey. Nevertheless, the Motion to Transfer was filed, and in fact granted, pursuant to Section 1404(a), not Section 1406. With regard to the argument that Virginia is an inconvenient forum, all of the submissions from all parties were considered at the time the Order of Transfer was granted, including the fact that Patricia Tischio has traveled there as a member of the Bontex Board; it appears she remains a member of the board. Concerning the financial considerations of a trial in Virginia, the 29 June 1998 Letter–Opinion thoroughly considered all data Patricia Tischio submitted in opposition to the Motion to Transfer.

She can not now be heard to complain that additional data and detail submitted with the Motion for Reargument were not considered in

the 29 June 1998 Letter–Opinion. This is especially so because all of the detail and data recently submitted were available to oppose the Motion to Transfer.

9. The proffered testimony of Fittin and Kaminski which was set forth in their affidavits submitted for the Motion for Reargument may nevertheless be hearsay because, unlike the affidavit of Gray, their affidavits do not clearly state they heard James Kostelni promise lifetime employment to Patricia Tischio.

In her affidavit, Fittin cryptically states "[Marie Surmonte] repeated her direction [that the operations of the New Jersey Facility remain open and that Patricia Tischio be employed by Bontex for life] and Defendant James Kostelni repeated his agreement to abide by her direction." Fittin Aff. ¶ 8. Kaminski vaguely states "James Kostelni did promise that Patricia Surmonte Tischio would remain employed for life at Bontex." Kaminski Aff. ¶ 10. Kaminski does not state that she heard James Kostelni make this statement.

able to obtain affidavits from Gray, Fittin and Kaminski in time to oppose the Motion to Transfer.[10]

A party may not submit evidence which was available prior to the issuance of the challenged order. *See Smith*, 155 F.R.D. at 97. Patricia Tischio cannot withhold data or detail in connection with the Motion to Transfer, wait for a decision on that motion and then attempt to dissect the decision and submit information which should have been presented earlier. As such, the affidavits of Gray, Fittin and Kaminski will not be considered. *See Harsco*, 779 F.2d at 909 (stating district court properly did not consider affidavits in connection with motion for reconsideration where affidavits could have been submitted in connection with prior motion for summary judgment).

Even if the data and detail contained in the affidavits of Gray, Fittin and Kaminski were to be considered, they would not warrant vacating the Order of Transfer. For an order to be set aside on account of newly discovered evidence pursuant to Rule 60(b)(2), the new evidence must (1) be material and not merely cumulative, (2) could not have been discovered before the issuance of the order through the exercise of reasonable diligence and (3) would probably have changed the outcome of the matter. *See Compass Technology, Inc., v. Tseng Laboratories, Inc.*, 71 F.3d 1125, 1130 (3d Cir.1995). The party requesting such relief "bears a heavy burden" which requires "more than a showing of the potential significance of the new evidence." *Id.*

The data or detail in the affidavits submitted in support to the Motion for Reargument do not qualify as new evidence. In addition, the Motion to Transfer would have been granted and the action would still have been transferred to the Western District of Virginia even if the supplemental affidavit of Patricia Tischio and the affidavits of Gray, Fittin and Kaminski were submitted with the Motion to Transfer. As mentioned, none of the parties are residents of New Jersey. *See* 29 June 1998 Letter–Opinion at 29–30. In addition, most of the material witnesses who decided to close the New Jersey Facility and to terminate Patricia Tischio are located in Virginia. *See id.* at 30–39. These decisions were made in Virginia. Finally, most of the relevant documents are located in Virginia. *See id.* at 39–40.

Patricia Tischio also asserts "this Court should reconsider its finding that 'it appears Dolores [Kostelni] is not subject to personal jurisdiction in New Jersey'" because she waived the defense of lack of jurisdiction by failing to raise it in the Motion to Transfer. *See* Supplemental Brief at 6–8. This assertion ignores the fact that the action was transferred pursuant to Section 1404(a), not Section 1406(a). The action was transferred for the convenience of the parties and witnesses and because of the ease of access to sources of proof. *See* 28 U.S.C. § 1404(a). Even if Dolores Kostelni is subject to jurisdiction in New Jersey, the convenience of the parties and witnesses and the access to sources of proof still favor the transfer of the action to the Western District of Virginia. *See* 29 June 1998 Letter–Opinion.

In the Supplemental Brief, Patricia Tischio also contends the 29 June 1998 Letter–Opinion overlooked controlling law. Specifically, Patricia Tischio contends the opinion overlooked the fact that New Jersey law allegedly will govern this dispute and that the testimony of Gray will be necessary to authenticate the 25 November 1994 Statement signed by Marie Surmonte. Neither contention, even if accurate, would warrant vacating the Order of Transfer.

The 29 June 1998 Letter–Opinion stated that a determination of the applicable law could not be made because the issue was not adequately briefed by the parties. *See* 29 June 1998 Letter–Opinion. More importantly, the 29 June 1998 Letter–Opinion stated that, even if New Jersey law were applicable, the other private and public factors weighed heavily in favor of transfer to the Western District of Virginia. *See id.* This remains so even considering the additional information

**10.** As stated, Patricia Tischio and the Defendants, not the Court, established the briefing schedule. *See* Patricia Tischio 11 May 1998 Letter. If Patricia Tischio needed additional time in which to obtain additional affidavits, she could have requested additional time.

submitted in connection with Motion for Reargument.

Based on the foregoing, the Motion for Reargument is denied.

### C. Request for Stay of Transfer Pending Appeal

 As mentioned, the Motion for Reargument also seeks a certification of the Order of Transfer pursuant to 28 U.S.C. § 1292(b) ("Section 1292(b)") and a stay of the Order of Transfer pending appeal.

A district court has jurisdiction to certify a question pursuant to Section 1392(b) even though it has ordered the action transferred to another district, provided that the physical transfer of the file is stayed pending a decision on the motion to certify. *See Hudson United Bank v. Chase Manhattan Bank,* 43 F.3d 843, 845 n. 4 (3d Cir.1994).

Orders transferring the venue of an action to another district are interlocutory, not final, in nature. *See McCreary Tire & Rubber Co. v. Ceat, S.p.A.,* 501 F.2d 1032, 1034 (3d Cir.1974); *see also* 28 U.S.C. § 1291 ("Section 1291").[11] Accordingly, such orders are not immediately appealable. *See In re Emerson Radio Corp.,* 52 F.3d 50, 53 (3d Cir. 1995); *Carteret Sav. Bank v. Shushan,* 919 F.2d 225, 228–30 (3d Cir.1990) (citing *Nascone v. Spudnuts, Inc.,* 735 F.2d 763, 764 (3d Cir.1984); *McCreary Tire & Rubber Co. v. CEAT S.P.A.,* 501 F.2d 1032, 1034 (3d Cir. 1974)). "Mandamus is therefore the appropriate mechanism for reviewing an allegedly improper transfer order."[12] *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 30 (3d Cir.1993) (citing *Bloom v. Barry,* 755 F.2d 356, 357 (3d Cir.1985); *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 168–69 (3d Cir.1982); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 23 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971)).

Patricia Tischio did not submit any facts, law or argument in her Supplemental Brief which support of her request for certification of the Order of Transfer. The Supplemental Brief merely states: "[T]he Court should reconsider and vacate its June 29, 1998 order or, in the alternative, should stay enforcement of said order pending appeal and should certify said order as ripe for appeal under 28 U.S.C. § 1292(b)." This statement is simply inadequate to warrant certification.

Based upon a review of the controlling law, it appears certification is inappropriate in this case. The Order of Transfer does not involve "a controlling question of law as to which there is substantial ground for difference of opinion" such that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Avellino v. Herron,* 991 F.Supp. 730, 734 (E.D.Pa.1998). Moreover, it is not the law concerning a transfer pursuant to Section 1404(a) with which Patricia Tischio is aggrieved. It appears she is dissatisfied with the ruling, as based upon the facts presented at the time the Motion to Transfer was decided. There is no reason to certify the issue or stay the transfer pending an attempt to perfect an interlocutory appeal from a procedural order.

### Conclusion

For the foregoing reasons, the Motion for Reargument is denied in its entirety.

---

**11.** Section 1291 provides, in relevant part:
 The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States....
 28 U.S.C. § 1291.

**12.** As mentioned, the Motion for Reargument addresses only an interlocutory appeal; mandamus is not an issue in the Motion for Reargument.