**John J. LOMANNO, Plaintiff,**

v.

**Thomas BLACK, Gina Hanchulak and United First Mortgage, Inc., Defendants.**

**Civil Action No. 02–8669.**

United States District Court, E.D. Pennsylvania.

Sept. 29, 2003.

William T. Wilson, Macelree Harvey Ltd., West Chester, PA, for Plaintiff.

Francis T. McDevitt, Naulty, Scaricamazza & McDevitt, Ltd., Marlton, NJ, for Defendants.

## MEMORANDUM

ROBERT F. KELLY, SR., District Judge.

### I. INTRODUCTION

On November 27, 2002, Plaintiff John J. Lomanno ("Lomanno") filed suit against Thomas Black ("Black") and Gina Hanchulak ("Hanchulak") (collectively the "Individual Defendants"). On April 10, 2003, after receiving a Notice of Right to Sue letter from the Equal Employment Opportunity Commission, Lomanno added United First Mortgage, Inc. ("UFM") as a Defendant in his Amended Complaint. UFM was Lomanno's former employer and the Individual Defendants were Lomanno's former co-workers. In October of 2000, Lomanno was employed by UFM as a Senior Vice President of the Wholesale Loan Origination Division. Subsequently,

Lomanno's employment was terminated by UFM in December of 2001. Lomanno asserts that his termination was the result of defamatory and false statements made by the Individual Defendants about him to senior executives of UFM. Lomanno asserts that the Individual Defendants are liable to him for defamation as well as tortious interference of his contract with UFM. Lomanno also asserts a Title VII claim against UFM, alleging it discriminated against him because of his sex.

Presently pending before this Court are the following motions: 1) the Individual Defendants' Motion to Dismiss the two tort claims against them for lack of personal jurisdiction, or in the alternative, their Motion to Transfer this matter to the United States District Court for the Eastern District of Virginia; and 2) UFM's Motion to Transfer this matter to the United States District Court for the Eastern District of Virginia. For the following reasons, the Court will transfer this action to the United States District Court for the Eastern District of Virginia.

### II. FACTUAL BACKGROUND

At the outset, it is important to note where all the parties currently reside. Lomanno is a resident of Pennsylvania. UFM is a Virginia based company. Black is a resident of Virginia but is no longer employed by UFM. Hanchulak is a resident of Virginia and continues to be employed by UFM.

Lomanno's action arises from his termination of employment by UFM in December of 2001. In October, 2000, Lomanno was hired by UFM to be a Senior Vice President of the Wholesale Loan Division of UFM. Lomanno conducted a sizeable portion of his work for UFM out of his home office in Phoenixville, Pennsylvania,

but also traveled to Virginia at times to conduct his work for UFM.[1]

Leading up to his termination, Lomanno traveled to Richmond, Virginia in November, 2001, as he sometimes did for business. During his time in Richmond, Lomanno, along with some of his co-workers and other individuals went out socially on two successive evenings. Apparently, the first evening began at the Marriot Hotel with drinks to welcome a new employee. Later that evening, Lomanno, along with the Individual Defendants and others visited additional drinking establishments.[2] Over the course of this first evening, the Individual Defendants alleged that Lomanno made inappropriate sexual comments and overtures towards Hanchulak. Lomanno denies having done so. Subsequently, on the second evening, at the company Christmas party, the Individual Defendants alleged that Lomanno's sexual harassment toward Hanchulak continued.

Lomanno's current suit focuses on what occurred after these two social gatherings. Less than a week after these two social occasions, Hanchulak and Black reported Lomanno's alleged inappropriate behavior and comments to UFM officials.[3] The Individual Defendants, along with UFM contend that upon investigating the

claims against Lomanno, UFM terminated Lomanno's employment with their company for violating the company's sexual harassment policy. Lomanno alleges that the comments Black and Hanchulak made to UFM regarding him were defamatory in nature and were made to tortiously interfere with his employment contract. Additionally, Lomanno alleges that UFM sexually discriminated against him by its failure to conduct a proper investigation into the Individual Defendants' sexual harassment claims. Lomanno asserts that the way UFM acted towards him regarding the sexual harassment claim was vastly different than the way UFM acted when a female employee was charged with sexual harassment.[4] As such, Lomanno asserts that UFM violated Title VII by unlawfully discriminating against him because of his sex.

## III.  DISCUSSION

### A.  SUBJECT MATTER JURISDICTION

For this Court to properly rule over the parties and the action, this Court must possess subject matter jurisdiction, personal jurisdiction and proper venue. *See Madotto v. Rosman*, No. CIV. A. 98–3221, 1998 WL 961390, at *2 (E.D.Pa. Dec. 10,

---

1. The actual amount of time Lomanno spent in Virginia working for UFM as opposed to working out of his home office in Phoenixville, Pennsylvania is in some dispute by the parties. However, the Court recognizes that Lomanno worked out of his home office in Pennsylvania but also, at times, had to spend time working out of UFM's Virginia offices.

2. Apparently, the evening began with Lomanno, the Individual Defendants, Adrienne Green ("Green") and A. John Schalow, III going out socially. (Schalow dep. 13–14). At some point over the course of the first evening, Black and Green left the group. Schalow's wife then met up with the remaining group as they frequented other establishments. (*Id.*)

3. Specifically, it appears as if the alleged defamatory and false statements made by the Individual Defendants were initially made to Stanley Vickhouse, a former UFM official, who has since retired.

4. Specifically, Lomanno asserts that the investigation into the alleged claim of sexual harassment by a female employee of UFM was more thorough than the investigation of the Individual Defendants' claims against Lomanno. (Am.Compl.¶ 12). Additionally, Lomanno asserts that the basis for the claim of sexual harassment on the part of this female employee was much stronger than the claim of sexual harassment against Lomanno, yet no disciplinary action was taken against this female employee by UFM. (*Id.*)

1998) (citations omitted). This Court has subject matter jurisdiction over the defamation and tortious interference claims based on diversity of citizenship.[5] 28 U.S.C. § 1332. Furthermore, this Court has subject matter over the Title VII unlawful discrimination action since the claim raises a federal question. 28 U.S.C. § 1331.

## B. PERSONAL JURISDICTION

■ The Individual Defendants argue that this Court lacks personal jurisdiction over them.[6] In the alternative, the Individual Defendants argue that this action should be transferred to the Eastern District of Virginia. Since the Court is transferring this case to the Eastern District of Virginia, it will decline to decide the personal jurisdiction questions raised by the Individual Defendants. A district court has the power to transfer a case pursuant to 28 U.S.C. § 1406(a) without personal jurisdiction over the defendants. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Additionally, a district court has the power to transfer a case pursuant to 28 U.S.C. § 1404(a) with or without personal jurisdiction over the defendants. *See U.S. v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.1964). Therefore, while the Individual Defendants have motioned this Court to dismiss the claims against them for lack of personal jurisdiction, the Court declines to answer this issue since "the resolution of the venue issue 'resolves' the case before this Court." *Leech v. First Cmty. Corp. of Boston,* 553 F.Supp. 688, 689 (W.D.Pa. 1982). As one court has stated, where "defendants have challenged a court's power over their persons and, at the same time, have moved alternatively for transfer, the interests of judicial economy are best served by initial address of the transfer issue." *Teleprompter Corp. v. Polinsky,* 447 F.Supp. 53, 54–55 (S.D.N.Y.1977). By not deciding the personal jurisdiction issue, the Court avoids having to decide constitutional questions that follow an argument for dismissal on the grounds of lack of personal jurisdiction. *See Sparks Tune–up Ctrs., Inc. v. Walter,* No. CIV. A. 88–7191, 1989 WL 11745, at *1 (E.D.Pa. Feb. 14, 1989) (citations omitted). Therefore, in the interest of expediency, the Court will move directly into deciding whether venue is properly laid in this District.

## C. VENUE

Lomanno has brought two tort claims against the Individual Defendants and a Title VII claim against UFM. The Individual Defendants have motioned this Court to transfer the claims against them to the Eastern District of Virginia under either 28 U.S.C. § 1406(a) if venue is deemed improper in this District or under 28 U.S.C. § 1404(a) if venue is deemed proper within this District. UFM states that venue as to the Title VII claim brought against it is proper in the Eastern District of Pennsylvania. As a result, UFM seeks a transfer of the Title VII claim according to Section 1404(a).

Under Section 1406(a), "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Where a

---

5. Since there is diversity of citizenship as to the two claims brought against the Individual Defendants, the Court deems it unnecessary to analyze whether the two claims have proper supplemental jurisdiction.

6. UFM has only made a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), and has not argued that this Court lacks personal jurisdiction over it.

defendant brings a Section 1406(a) motion to transfer, "the defendant 'moving to dismiss ... bears the burden of establishing affirmatively that venue is improper.'" *Tucker v. Interscope Records, Inc.* No. 98–4288, 1999 WL 80363, at *3 (E.D.Pa. Feb. 17, 1999)(quoting *Born v. Iannacone,* No. Civ. A. 97–5607, 1998 WL 297621, at *3 (E.D.Pa. June 3, 1998)). Alternatively, Section 1404(a) states that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Similar to Section 1406(a) however, when a party brings a Section 1404(a) motion to transfer, "the burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer." *Connors v. R & S Parts Servs., Inc.,* 248 F.Supp.2d 394, 396 (E.D.Pa.2003) (citations omitted). Therefore, under either Section 1406(a) or Section 1404(a), the burden is on the Individual Defendants and UFM to establish that venue is improperly laid in this District. Additionally, as has been previously stated, this Court has the power to transfer with or without personal jurisdiction.

## 1. Venue for the Defamation and Tortious Interference Claims

■ Regarding the Title VII claim, UFM does not argue that venue is improper within this District. However, simply because UFM states venue is proper as to the Title VII claim does not necessarily

mean that venue is proper as to the tort claims asserted against the Individual Defendants. In fact, "venue must be proper for each claim in a case with multiple claims." *Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the United States and Canada,* 812 F.Supp. 509, 517 (E.D.Pa.1992). In *Philadelphia Musical Society,* the court stated that deciding whether venue is proper as to each claim is especially proper where one of the claims asserted has a specific venue provision. *Id.*

In this case, proper venue is established for the Title VII claim against UFM through a separate and distinct venue statute applicable to Title VII claims. Here, venue is proper as to the Title VII claim because this District is the judicial district where Lomanno would have worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(f)(3). Nevertheless, as has been stated, merely because venue is proper as to the Title VII claim does not necessarily make venue proper as to the two tort claims against the Individual Defendants. Rather, this Court must make an independent analysis to determine whether venue is proper as to the two tort claims asserted against the Individual Defendants.[7]

Regarding the two claims asserted against the Individual Defendants, Lomanno asserts in his Amended Complaint that jurisdiction is proper pursuant to diversity of citizenship. Venue in diversity cases is

---

7. While not specifically mentioned by either party, cases cited by both parties raise the doctrine of "pendant venue." "This novel concept allows for the application of the principles of pendant jurisdiction to situations involving venue when claims arise out of a common nucleus of operative facts." *Christian Dalloz, S.A. v. Holden,* No. CIV. A. 90–0835, 1990 WL 121342, at *2 n. 2 (E.D.Pa. Aug. 20, 1990) (citations omitted). However, this "principle is generally applied when the

causes of action have identical parties and proofs." *Id.* Furthermore, the concept of pendant venue "does not appear to be applied where differing claims are asserted against multiple defendants." *Schultz v. Ary,* 175 F.Supp.2d 959, 964 (E.D.Mich.2001). Therefore, the Court will not apply the doctrine of pendant venue to find venue proper over the defamation and tortious interference claims where venue is proper in this District as to a Title VII sexual discrimination claim.

governed by 28 U.S.C. § 1391(a) which allows for venue to be proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendants is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).[8] Since both Black and Hanchulak reside in Virginia, venue could be properly laid in the Eastern District of Virginia pursuant to Section 1391. However, as to the Eastern District of Pennsylvania, since both Individual Defendants reside in Virginia, subsections (1) and (3) of Section 1391(a) are inapplicable to the claims brought against them. Therefore, the only way venue is properly laid in this District is whether a substantial part of the events giving rise to the claim occurred within the Eastern District of Pennsylvania.

To determine whether a substantial part of the events giving rise to the defamation and tortious interference claims occurred in Pennsylvania, the Court will conduct a claim specific inquiry. The Court of Appeals for the Third Circuit ("Third Circuit") has explained that "[t]he test for determining venue [under Section 1391(a)(2) ] is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.' " *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994). Furthermore, "[e]ven if some events that gave rise to a claim occurred in a district, events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *DaimlerChrysler Corp. v. Askinazi*, No. CIV.A. 99–5581, 2000 WL 822449, at *6 (E.D.Pa. June 26, 2000) (citations and quotations omitted). Specifically, the events must qualify as substantial under Section 1391(a)(2) for venue to be proper. *Pa. Gear Corp. v. Fulton*, No. CIV. A. 98–1538, 1999 WL 80260, at *2 (E.D.Pa. Jan. 26, 1999) (citations omitted). "To determine whether an act or omission giving rise to the claims is substantial, the court must look at the nature of the dispute." *Id.* (citing *Cottman Transmission Sys.*, 36 F.3d at 295).

In *DaimlerChrysler*, the court had to determine whether venue was proper under Section 1391(a)(2) for a defamation claim. 2000 WL 822449, at *6–7. The court stated that venue will not be proper in a district for a defamation claim if injury is the only event occurring in that district. *Id.* at *6. The court did state however, that in defamation cases, "venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." *Id.* (citations omitted). Lomanno's defamation claim against the Individual Defendants is based on the alleged defamatory statements that these two Virginia based employees of UFM made to senior UFM officials regarding Lomanno's alleged inappropriate behavior. No party asserts that any of these alleged defamatory and false statements were published in Pennsylvania. Specifically, these statements were

---

**8.** 28 U.S.C. § 1391(b) is the general venue statute for actions not founded solely on diversity. The first two subsections of Section 1391(b) track exactly the same language as Section 1391(a)(1)-(2). Therefore, the analysis of whether venue lies in this District for the two tort claims would be the same as to these two subsections. Additionally, if Section 1391(b) were to apply, since both Individual Defendants reside in Virginia and cannot be found in Pennsylvania, Section 1391(b)(3) would be inapplicable.

made to UFM officials in Virginia, where Black and Hanchulak resided and worked. It appears as if all of the "events" giving rise to Lomanno's defamation claim occurred in Virginia, and the fact that Lomanno suffered injury within Pennsylvania is not enough to establish venue pursuant to Section 1391(a)(2). Therefore, the Court finds that venue is improperly laid within the Eastern District of Pennsylvania as to the defamation claim.

Next, the Court will turn its attention to the tortious interference claim and whether venue is properly laid in this District. Similar to the defamation claim, the Court finds that venue is improperly laid within this District as to the tortious interference claim brought against the Individual Defendants. Again, all of the alleged actions regarding this claim took place in Virginia, where Black and Hanchulak resided and worked, and where they reported Lomanno's alleged inappropriate conduct to their superiors. Such alleged tortious conduct by the Individual Defendants took place predominantly, if not entirely, within Virginia. Therefore, venue is improper with regard to this claim in Pennsylvania, since a substantial part of the events giving rise to this claim took place in Virginia, and not in Pennsylvania. *See Pa. Gear*, 1999 WL 80260, at *2–3.

### 2. Transfer of the Defamation and Tortious Interference Claims

Since the Court concludes that venue is improper as to the defamation and tortious interference claims within this District, 28 U.S.C. § 1406(a) will be the applicable transfer statute. Under Section 1406(a), the Court can either dismiss the claims or transfer the claims to a District where the claims could have been brought. In this case, the claims against the Individual Defendants could have been brought in the Eastern District of Virginia. Therefore, the Court will transfer these two claims to the Eastern District of Virginia.

### 3. Transfer of the Title VII Claim

UFM has conceded that venue is proper within this District as to the Title VII claim against them. Therefore, the proper mode of analysis regarding whether to transfer the Title VII claim is to use Section 1404(a) rather than Section 1406(a). Before undergoing a weighing of the Section 1404(a) factors, the Court notes that if the Title VII claim proceeds within this District, the Court will have to sever the two tort claims brought against the Individual Defendants. The Third Circuit has stated that a court "should not sever [claims] if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir.1993)(internal quotations omitted). In this case, many of the issues that will be raised by the two tort claims will be similar to those raised in the Title VII claim. Specifically, all three claims will focus on the alleged sexual harassment of Lomanno towards Hanchulak.

Initially, the Court recognizes that while Section 1404(a) "gives the district courts discretion to decide a motion to transfer based on an individualized, case-by-case consideration of convenience and fairness, such motions are not to be liberally granted." *Dinterman v. Nationwide Mut. Ins. Co.*, 26 F.Supp.2d 747, 749 (E.D.Pa.1998) (citations omitted). Also, when a party seeks a Section 1404(a) transfer, the burden is on that party to show that the existing forum is inconvenient. *See id.* (citations omitted). The Court believes such a showing has been made as to the Title VII claim.

Before engaging in a Section 1404(a) balancing, the Court must first determine whether venue could be properly laid in another district so as to permit a transfer under Section 1404(a). As has been pre-

viously stated, Title VII has its own specific venue statute. 42 U.S.C. § 2000e–5(f)(3). Venue is proper as to a Title VII claim in the Eastern District of Virginia, in addition to the Eastern District of Pennsylvania because the alleged unlawful sex discrimination would have occurred in Virginia, where UFM is based, and Virginia is where the employment records relevant to such a practice are maintained and administered. *See id.* Therefore, venue as to the Title VII action is proper both in the Eastern District of Pennsylvania as well as the Eastern District of Virginia.

The Third Circuit has set out a list of public and private factors a district court should consider in determining whether to transfer a claim pursuant to Section 1404(a). *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.1995). The private factors include plaintiff's forum preference, defendant's forum preference, whether the claim arose elsewhere, the convenience of the parties, the convenience of the witnesses and the location of books and records. *See id.* at 879. The public interests include the enforceability of judgment, any practical considerations that could make the trial easy, expeditious or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interests in deciding local controversies at home, the public policies of the fora and the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* at 879–80.

### a. The Private Factors

█ The first factor that the Court will consider is Lomanno's choice of forum. In this case, Lomanno's forum preference is the Eastern District of Pennsylvania.

Usually, Lomanno's forum choice is given significant deference under Section 1404(a) and is a preference that should not be disturbed lightly. *See Pro Spice, Inc. v. Omni Trade Group, Inc.,* 173 F.Supp.2d 336, 339 (E.D.Pa.2001) (citations omitted). However, "plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum." *Rowles v. Hammermill Paper Co., Inc.,* 689 F.Supp. 494, 496 (E.D.Pa.1988) (citations omitted). In this case, most if not all of the alleged Title VII violations complained of occurred in Virginia as opposed to Pennsylvania. UFM is based out of Virginia, and that is where any alleged Title VII violation would have occurred since that is where the decision to fire Lomanno was made. Virginia was also the location upon which Lomanno was told he was fired by UFM officials. Most if not all of the alleged conduct regarding the Title VII action occurred in Virginia, not Pennsylvania. Therefore, while the Court recognizes that a plaintiff's choice of forum is usually given significant weight, in this case, since the conduct complained of occurred in Virginia, not Pennsylvania, such a preference will be given less weight.[9]

In *Tischio v. Bontex, Inc.,* 16 F.Supp.2d 511 (D.N.J.1998), the court similarly gave less deference to plaintiff's choice of forum where a former employee brought among other claims, a discrimination claim. In that case, the court stated that the complaint demonstrated that the events giving rise to the action occurred predominantly, if not entirely in Virginia. *Id.* at 521. The court continued by stating that "[t]he complaint failed to assert what actionable decisions and/or conduct by the Defendants were made in New Jersey." *Id.* Finally, the court concluded that since the defen-

---

9. As one court has put it, "[t]o insist that plaintiff's choice of forum is controlling would be to render § 1404(a) meaningless.

Equally important is the balancing of the other relevant choice-of-forum considerations." *Rowles,* 689 F.Supp. at 496.

dants established that the operative facts to the litigation occurred in Virginia and not New Jersey, plaintiff's choice of forum for the litigation was entitled to less deference. *Id.* (citations omitted). Similarly, Lomanno has asserted little to no operative facts as to any actionable decisions or conduct by UFM made in Pennsylvania. Rather, such alleged discriminatory conduct and/or decisions were made in Virginia. Therefore, as in *Tischio*, this Court will give Lomanno's forum preference less weight since most of the operative facts of this claim arose in Virginia.

As to UFM's preference (as well as the Individual Defendants' preference), it states its preference to litigate in the Eastern District of Virginia. UFM is based out of Virginia (Black and Hanchulak are also residents of Virginia). Therefore, this factor balances towards Virginia.

The next private factor the Court must consider is where the claim arose. Lomanno's Title VII action alleges UFM discriminated against him on the basis of his sex because UFM took no action when previously presented with a sexual harassment claim against a female employee. Therefore, the emphasis of Lomanno's Title VII action focuses on the decision-making and investigations UFM conducted with regard to such complaints. It follows that such a claim would therefore arise in Virginia, where UFM is based. This is where UFM ultimately made the decision to terminate Lomanno, as opposed to Pennsylvania, where Lomanno conducted some of his work. *See Evans v. Merck & Co., Inc.*, No. 01–4820, 2002 WL 89622, at *3 (E.D.Pa. Jan. 23, 2002)(stating that a claim for discrimination arises for purposes of Section 1404(a) where the alleged discriminatory acts take place). Thus, this factor balances more in favor of the East-

ern District of Virginia as opposed to the Eastern District of Pennsylvania.

The next factor to be considered is the convenience to the parties. As Lomanno correctly asserts, the Court cannot simply transfer the inconvenience of UFM having to litigate in the Eastern District of Pennsylvania onto Lomanno having to litigate in the Eastern District of Virginia. *See Dinterman*, 26 F.Supp.2d at 749–50 (stating that a "court should not grant a transfer simply because the transferee court is more convenient for the defendants and therefore if the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed"). Clearly, having UFM defend the Title VII claim against them in Pennsylvania would be inconvenient since they are based out of Virginia, and some of the employees and former employees of UFM with knowledge as to this action reside in Virginia. The Court though also recognizes that having Lomanno litigate this action in Virginia is inconvenient for him. However, while the precise amount of time Lomanno spent working out of UFM's Virginia offices is in some dispute, what is clear from the record is that Lomanno did spend a fair percentage of his time working for UFM out of the company's Virginia offices. Similarly, it appears as if there is nobody in UFM with knowledge as to this action who conducted significant activity or spent time in Pennsylvania with the exception of Lomanno.[10] Since Lomanno spent periods of time working in Virginia, he cannot as effectively argue that pursuing the Title VII claim in Virginia is hugely inconvenient. Therefore, the Court finds that the relative inconvenience of Lomanno as compared to UFM is slightly less since Lomanno regularly traveled to Virginia. *See e.g., Tischio*, 16 F. Sup.2d at 522 (ana-

10. The actual amount of time Lomanno spent working from Virginia appears to be in some dispute, but what is clear from the record is that Lomanno spent periods of time over the course of his employment with UFM working out of Virginia.

lyzing convenience of parties factor and stating that transfer of action from New Jersey to Virginia will only require plaintiff to travel to Virginia where she often had to attend business meetings).

The next private factor the Court will consider is the convenience of material witnesses. As one court has stated, "[t]he convenience of witnesses is a particularly significant factor in a court's decision whether to transfer." *Idasetima v. Wabash Metal Prods., Inc.*, No. 01–197, 2001 WL 1526270, at *2 (E.D.Pa. Nov. 29, 2001)(citing *Lindley v. Caterpillar, Inc.*, 93 F.Supp.2d 615, 617 (E.D.Pa.2000)). Lomanno has set forth no witnesses other than himself who reside in or near the Eastern District of Pennsylvania. UFM however, has provided the Court with a list of witnesses.[11] Of these witnesses listed as to the Title VII claim, Gina Hanchulak and Randall Wilson still work for UFM, and therefore the convenience of these two witnesses carry "no weight because the parties are obligated to procure their attendance at trial." *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77

F.Supp.2d 505, 510 (D.Del.1999)(citing *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 203 (D.Del.1998)). However, the other witnesses provided by UFM, specifically Thomas Black, Stanley Vickhouse ("Vickhouse") and A. John Schalow, III ("Schalow") are all no longer employed by UFM.[12]

Vickhouse is a material witness since he was actively involved in the investigation into the sexual harassment claims against Lomanno, and therefore is a key witness as to any alleged Title VII claim against UFM.[13] Vickhouse now currently resides in Richmond, Virginia, and has stated that traveling to the Eastern District of Pennsylvania would be inconvenient for him. (Vickhouse aff., ¶ 9). Another key witness to the Title VII claim is Schalow. Like Vickhouse, Schalow no longer works for UFM, and is not considered a party to the Title VII claim against UFM. As has been stated, Schalow was present during the alleged inappropriate behavior by Lomanno. Additionally, Schalow provided a statement to UFM regarding the events that transpired.[14] Schalow now resides in

---

**11.** UFM also contends that Adrienne Green is a key witness. (Supplemental Mem. Law of Def. Black and Hanchulak Mot. to Dismiss or in the Alternative Transfer & UFM's Mot. to Transfer, 10–11). Green was present for part of the social gathering on the first evening. (Green aff., ¶ 6). Green currently lives in Georgia and has stated that it would be inconvenient for her to travel to Pennsylvania to testify. (*Id.* at ¶ 9). However, what is somewhat unclear from her affidavit is whether she continues to be employed by UFM. Regarding this point, Green simply states that "[d]uring the calendar year of 2001, I was employed at [UFM]." (*Id.* at ¶ 4). Her affidavit though is silent as to whether she continues to be employed by UFM. This is an important factor the Court is unable to discern from Green's affidavit. Since the burden with a Section 1404(a) analysis is on the moving party, and since UFM has failed to properly set out that Green is no longer employed with UFM, the Court will not consider her in the convenience of witnesses factor.

**12.** While Thomas Black is a party as to the defamation and tortious interference claim, he is not a party as to the Title VII claim since he is no longer employed by UFM. Additionally since the Court has found it proper to transfer the tort claims against him to Virginia, the Court can consider the relative inconvenience to Black as to the Title VII claim since he is not a party to that claim nor is he currently employed by UFM.

**13.** If the Court were to conduct a Section 1404(a) analysis with regard to the two tort claims against the individual Defendants, Stanley Vickhouse would also be a key witness since many of the alleged defamatory and false statements about Lomanno would have been made to him.

**14.** The actual truth of the statement Schalow gave to UFM appears to be in some dispute based on Schalow's deposition. However, Schalow remains a key witness to the Title

Virginia and has stated that having to testify in Pennsylvania would be inconvenient for him. (Schalow dep., 48). Finally, Black would be considered a material witness to the Title VII action against Lomanno. He is no longer an employee of UFM, and cannot be considered a party as to the Title VII claim.[15] Black currently resides in Virginia. Additionally, as has been shown, the two tort claims against him will be transferred to Virginia. Black has stated that his only connection to Pennsylvania is the personal trips he takes to the state a few times a year, as well as the faxes and e-mails he sent to Pennsylvania while working for UFM. (Black aff., ¶¶ 1–2). To have Black come to Pennsylvania as opposed to Virginia, where he lives and where the two tort claims against him will proceed, would be inconvenient. Therefore, regarding the convenience of the material witnesses as to the Title VII claim, the Court finds that this factor weighs more heavily towards transferring the Title VII claim to Virginia rather than keeping this claim in Pennsylvania.[16]

The final private factor the Court will consider is the location of books and records. As one Court has noted, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Am. High–Income Trust v. Allied-Signal, Inc.*, No. CIV.A. 00–690 GMS, 2002 WL 373473, at *5 (D.Del. March 7, 2002) (citations omitted). The Third Circuit has stated that this factor should be limited to the extent that the files could not be produced in the alternative forum. *See Jumara*, 55 F.3d at 879. The Court notes that the relevant records regarding any investigation into the sexual harassment claims against Lomanno would be located in Virginia. Additionally, as to the female employee Lommano asserts was treated differently, these records would also be located in Virginia, where UFM is headquartered. However, no party has asserted that these relevant records could not be produced in Pennsylvania and, therefore, the Court will consider this factor neutral.

**b. The Public Factors**

■ As other courts have stated, depending on the circumstances, some public interest factors may play no role in a Section 1404(a) balancing. *See Am. High–Income Trust*, 2002 WL 373473, at *6 (citations omitted). Therefore, the Court will only consider those factors that are relevant to the current action. *See id.* The Court will consider two of the public factors, namely, the practical considerations making the trial easier, more expeditious and less expensive as well as the local interest in deciding local controversies at home.

The first public factor the Court will consider is any practical considerations that will make the trial easier, more expeditious and less expensive. As has been previously stated, the Court will be trans-

---

VII action since he was present during the alleged sexual harassment of Hanchulak which was the foundation for Lomanno's firing, and provided a statement to UFM officials upon their inquiry.

15. Even if Black was to somehow be considered a party as to the Title VII claim since he is a party as to the overall action, the Court would still find that because of the other material witnesses, this factor would remain weighed towards Virginia as opposed to Pennsylvania.

16. For many of the same reasons, if the Court were to conduct a Section 1404(a) analysis as to the claims against the Individual Defendants and the convenience of witnesses, the Court would find that such a factor balances towards Virginia. This is particularly true due to the inconvenience that Schalow and Vickhouse would experience by having to travel to Pennsylvania as opposed to their home state of Virginia.

ferring the two tort claims against the Individual Defendants to the Eastern District of Virginia. Much of the same testimony, witnesses and factual inquiries as to the defamation, tortious interference and Title VII claims are similar. All three claims focus on the alleged sexual harassment claims made by the Individual Defendants against Lomanno. Conducting the trial as to the Title VII claim with the tort claims would make the trial easier, more expeditious and less expensive since it would allow all the relevant inquires to be conducted in one location. Additionally, many of the witnesses as to both the tort claims and Title VII claims are the same, so the trial would be conducted more expeditiously and less expensively if these witnesses only had to take the stand once, in one location and in one trial. Therefore, the Court finds that the practical considerations favor transferring the Title VII action to the Eastern District of Virginia.

The final factor the Court will consider is the local interest in having local controversies decided at home. UFM has presented the Court with arguments that Virginia has the greater local interest in this case since the alleged sexual discrimination took place out of UFM's Richmond, Virginia office. Thus, UFM argues Virginia has the greater interest in analyzing the employment practices of businesses within its borders. Lomanno counters that argument by stating that since he regularly worked out of his home office in Pennsylvania, Pennsylvania has a strong interest in analyzing whether employees working in Pennsylvania were discriminated against. Both parties have asserted strong arguments as to this factor and, therefore, the Court will consider this factor to be neutral in its balancing.

In conclusion, the majority of the Section 1404(a) balancing factors weigh towards transferring the Title VII claim against UFM to the Eastern District of Virginia. Therefore, pursuant to Section 1404(a), UFM has satisfied its burden and the Court will transfer the Title VII claim against UFM to the Eastern District of Virginia.[17]

## IV. CONCLUSION

The Court has conducted a claim specific analysis as to whether venue is proper as

17. Even if this District had proper venue as to the claims brought against the Individual Defendants, for many of the same reasons the Court has elected to transfer the Title VII claim to the Eastern District of Virginia, the Court would transfer the two tort claims pursuant to Section 1404(a). Specifically, the factors the Court would deem important would include Defendant's forum preference, where the claim arose, the convenience of the parties, the convenience of the material witnesses and practical considerations. While plaintiff's choice of forum would be given some weight, it would be given less weight since none of the conduct alleged as to the defamation or tortious interference claim occurred in Pennsylvania. As to the Individual Defendants' forum preference, both Individual Defendants prefer to litigate the claims against them in Virginia. As the Court has illustrated, the two tort claims against the Individual Defendants arose in Virginia, not Pennsylvania. Additionally, for the same reasons listed in the Title VII discussion, the inconvenience towards Lomanno is given less weight since Lomanno regularly traveled to Virginia. Regarding the final private factor, the convenience of the witnesses would weigh towards transferring these claims to Virginia as well.

As to the public factors, the Court has already illustrated why the Title VII claim will be transferred pursuant to Section 1404(a). The practical considerations additionally would support transferring the two tort claims to the Eastern District of Virginia since all three claims have similar witnesses and factual inquiries regarding the alleged sexual harassment by Lomanno. Therefore, transferring the two tort claims to Virginia would make this action proceed more expeditiously and less expensively since all three claims could proceed within the same action.

to the three claims asserted by Lomanno. Regarding the two tort claims asserted against the Individual Defendants, the Court has found that venue is improper within this District and that pursuant to Section 1406(a), these claims should be transferred to the United States District Court for the Eastern District of Virginia.[18] Regarding the Title VII claim, the interests of justice as well as convenience are better served in the Eastern District of Virginia than in this District. Pursuant to Section 1404(a), the Court will transfer this claim to the Eastern District of Virginia as well. Therefore, UFM's and the Individual Defendants' requests for transfer to the Eastern District of Virginia will be granted.

An appropriate Order follows.

### *ORDER*

AND NOW, this 29th day of September, 2003, upon consideration of Defendants Thomas Black and Gina Hanchulak's Motion to Dismiss or in the Alternative Transfer (Doc. No. 5), and Defendant United First Mortgage, Inc.'s Motion to Transfer (Doc. No. 8), together with memoranda, supporting materials and the responses and replies thereto, it is hereby ORDERED that:

1. the Motions to Transfer are GRANTED;

2. this matter is TRANSFERRED to the United States District Court for the Eastern District of Virginia. 28 U.S.C. § 1404(a); 28 U.S.C. § 1406(a);

3. the Clerk of the Court is directed to TRANSFER the entire file to the Clerk of the United States District Court for the Eastern District of Virginia.

---

18. As the Court properly set forth in note 17, even if venue is proper as to these two claims in Pennsylvania, a balancing of the Section 1404(a) factors would also favor a transfer to the Eastern District of Virginia.